563 A.2d 969

BETHEL PARK CITIZENS FOR BETTER EDUCATION LESS TAXES (BELT), an unincorporated association by Philip G. DeHUFF and Margaret L. Rectenwald Trustees ad litem et al., Petitioners,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF COMMUNITY AFFAIRS and Bethel Park School District, Respondents.

Commonwealth Court of Pennsylvania.

Argued Aug. 30, 1989.

Decided Sept. 6, 1989.

440

Robert L. Byer, Timothy P. Ryan, and Robert D. Hazlett, Eckert, Seamans, Cherin & Mellott, Pittsburgh, for Bethel Park School Dist.

Ira Weiss, Mistick, Sittig & Weiss, for petitioner.

Joel Weisberg, Ellen M. Coggins, Carol P. Cocheres, Eckert, Seamans, Cherin & Mellott, Harrisburg, and William C. Andrews, Sol., Bethel Park School Dist., Pittsburgh, for respondents.

Before BARRY and McGINLEY, JJ., and NARICK, Senior Judge.

## OPINION

BARRY, Judge.

This is an expedited appeal of an order of the Department of Community Affairs (DCA) dismissing petitioners' complaint challenging the validity of proceedings of Bethel Park School District (School District) in connection with the issuance of general obligation bonds. We affirm.

On June 29, 1989, the School District adopted a resolution (Debt Resolution) which authorized incurring non-electoral indebtedness in the principal amount of $30,510,000 for school construction purposes. The debt is in the form of general obligation bonds. On July 7, 1989, the School District, pursuant to Section 411 of the Local Government Unit Debt Act (Debt Act), Act of July 12, 1972, P.L. 781, *as amended,* 53 P.S. § 6780–161 (Supp.1989), filed the proceedings with DCA together with its application requesting DCA to approve delivery of the bonds. Delivery of the bonds was scheduled for August 2, 1989.

On July 19, 1989, petitioners filed their complaint with DCA asserting invalidity of the proceedings. The filing of the complaint was in accordance with Section 901 of the Debt Act, 53 P.S. § 6780–401 (Supp.1989). The complaint set forth five allegations on the basis of which petitioners requested DCA to withhold approval of the bond issue.

Petitioners pursue only two of the allegations on appeal. Those allegations, as stated in petitioners' complaint, are:

1. The only item of construction, acquisition, extraordinary maintenance or repair which has been undertaken by [School District] to the present time is improvements to the stadium and bus garage at a combined estimated cost of $1,578,250. [School District] has neither finally determined, or otherwise sufficiently identified, for purposes of the definitions and other provisions of the Debt Act, those items of school construction beyond the stadium and bus garage which it has attempted to include in its definition of Project and to finance by the issuance of the Bonds, in violation of Section 102(c)(12) of the Debt Act, 53 P.S. § 6780–2(c)(12).

. . . .

4. The amounts of the stated maturities or principal installments of the Bonds have not been fixed either: (1) so as to amortize the Bonds on at least an approximately level debt service plan; or (2) so that the debt service on outstanding debt of the same classification (which, for this purpose, is both general obligation and lease rental) will be brought more nearly into an over-all level annual debt service plan, in violation of Section 602(b) of the Debt Act, 53 P.S. § 6780–252(b).

(R.R. 6a–7a).

The School District filed an answer to the complaint and included therein a motion to dismiss in accordance with 1 Pa.Code § 35.54. In response to petitioners' first allegation, the School District admits that only the stadium and garage are currently under construction. In answer to the remaining averments of the first allegation, however, the School District replies:

[T]he School District specifically identified a school construction program in the first recital of the Debt Resolution's preamble as 'consisting of capital improvements to the Lincoln and Memorial Elementary Schools, capital improvements and additions to Franklin, Washington and William Penn Elementary Schools, converting the existing

Neil Armstrong Middle School to an elementary school, capital improvements and additions to the Bethel Park Senior High School, capital improvements to the High School Stadium and the removal of asbestos from the Bus Garage....' In addition, the second recital of the Debt Resolution provided '... it is necessary that the School District issue its general obligation bonds in order to finance the costs of said construction program....' Section 2 of the Debt Resolution summarized that the indebtedness was 'authorized and incurred (1) to pay the cost of the school construction program and (2) to pay the costs of issuance of bonds....'

(R.R. 21a–22a). In further response, the School District attached and incorporated into its answer a report entitled "Bethel Park School District Renovation Plans 1989–1992, An Investment in Our Future: Our Children, An Investment in Our Community", which details the school construction program and which was distributed to the public at a School District meeting held on March 15, 1989. *Id.* In response to the petitioners' allegations concerning the debt service schedule on the outstanding debt, the School District states that the maturity schedule is within the mandates of Section 602(b) of the Debt Act, 53 P.S. § 6780–252(b) (Supp.1989). Thereafter, petitioners filed an answer to the School District's motion to dismiss.

Oral argument on the motion to dismiss was scheduled before DCA for August 23, 1989. Upon further motion of the School District and without objection from petitioners, the DCA argument was rescheduled and held on August 11, 1989. Following the argument, DCA dismissed petitioners' complaint, finding it legally insufficient. This timely appeal followed and argument thereon was accelerated and held on August 30, 1989.

## DISCUSSION

■ This court has appellate jurisdiction in this matter by virtue of 42 Pa.C.S. § 763(a)(2) and Section 902 of the Debt Act, 53 P.S. § 6780–402. Our scope of review in this case is

restricted to whether constitutional rights were violated or an error of law was committed. *Property Owners v. Pleasant Valley School District*, 100 Pa.Cmwlth.Ct. 513, 517–18, 515 A.2d 85, 88 (1986).

Petitioners frame the questions presented for review as: (1) Whether DCA erred in denying the petitioners a hearing when the complaint alleged that the project, as described in the debt resolution, did not, in fact, exist; and (2) Whether DCA erred in denying the petitioners a hearing when the debt service schedule, submitted by the School District, was not level, in violation of Section 602 of the Debt Act, 53 P.S. § 6780–252 (Supp.1989).

Preliminarily, we note that our legislature has greatly circumscribed DCA's scope of review under the Debt Act. As applied to the instant action, Section 901(b) of the Debt Act, 53 P.S. § 6780–401(b) (Supp.1989), limits DCA's review to determining (1) the regularity of the proceedings, (2) the validity of the bonds, and (3) the legality of the purpose for which the bonds are issued. *Property Owners v. Pleasant Valley School District*, 100 Pa.Cmwlth.Ct. 513, 517, 515 A.2d 85, 88 (1986). Each of these determinations in this case is legal in nature and does not require a hearing to resolve factual issues. We believe this circumscribed scope of review is appropriate in light of the requirement that, if challenged, DCA must inquire into the regularity of the proceedings. A finding that the proceedings were regular necessarily means that the petitioners were afforded a forum at which to be heard, i.e. the public meetings of the School Board. Moreover, a requirement that an evidentiary hearing be held in all instances would permit disgruntled taxpayers, who were unable at the public meetings to convince School Board members of the wisdom of the taxpayers' viewpoint, to raise procedural roadblocks which would substantially delay or even end the borrowing.

At first glance, the first question presented by petitioners appears to raise a challenge which might require an evidentiary hearing. In this action, petitioners state that the project, as described in the Debt Resolution, does not "ex-

ist". Given one interpretation, this statement could mean, for example, that the schools scheduled for renovation do not exist and, therefore, the School District's conduct is fraudulent. This would go to the heart of the legality of the proceedings. If fraudulent conduct is alleged and supported by specific allegations, an evidentiary hearing before DCA, in that instance, would be appropriate. In this action, however, no such fraud is averred. Rather, within the context of the allegations of petitioners' complaint, the statement that the project does not "exist" presents a purely legal question. Petitioners argue that, other than the stadium and bus garage, the construction identified in the Debt Resolution (1) has not begun (does not exist), and (2) has not been sufficiently identified to satisfy the requirements of Section 102(c)(12) of the Debt Act, 53 P.S. § 6780–2(c)(12) (Supp.1989).

■ Petitioners' first argument is based on an overly restrictive reading of Section 102(c)(12)(i), which defines "Project", in part, as "any item of construction, acquisition, extraordinary maintenance or repair *which has been undertaken* by a local government unit." (Emphasis added.) Petitioners would have us read this subsection to require that actual construction be underway or completely and exhaustively planned before the School District is permitted to take the steps necessary to finance the construction. We will not do this in light of Section 102(c)(12)(ii), which permits the School District to finance "preliminary studies, surveying, planning, testing or design work" relating to the construction project. Clearly, the Debt Act permits the passage of a resolution *to incur debt prior to commence-*ment of construction.

■ Equally untenable is petitioners' argument that the project to be financed in the instant case is not sufficiently identified so as to meet the requirements of the Debt Act. The record before DCA and this Court contains a 28 page report detailing the School District's construction project. While it is true that this report is not included within the Debt Resolution, Pennsylvania law does not require it to be.

Our legislature requires just "[a] brief description of the project for which the debt is to be incurred" within the Debt Resolution. § 403(1)(i) of the Debt Act, 53 P.S. § 6780–153(1)(i) (Supp.1989). We agree with DCA's finding, without resort to an evidentiary hearing, that these School District proceedings were legally sufficient.

■ The second challenge raised by petitioners is DCA's alleged error in failing to hold a hearing regarding the debt service schedule. Petitioners aver that the debt service schedule adopted by the School District violates the "approximate level debt service" requirement of Section 602(b) of the Debt Act, 53 P.S. § 6780–252(b) (Supp.1989). Thus DCA was asked to pass upon the *legality* of the debt service schedule. Section 602(b) requires the fixing of maturity amounts "(1) so as to amortize the issue on at least an approximately level annual debt service plan" or "(2) so that the debt service on outstanding debt of the same classification ... will be brought more nearly into an over-all level annual debt service plan." The School District chose the latter technique, also known as the "wrap-around" method. On this issue DCA concluded:

> The [S]chool [D]istrict has selected the second alternate method, commonly known as a "wrap-around" schedule of repayment. Without going into lengthy detail, a careful review of the [D]istrict's proposal shows it to be in line with many of the schedules which are regularly approved by this Department. The key to this determination is the Act's requirements for not level debt service, but 'at least an approximately level annual debt service'; or one which 'will be brought more nearly into an over-all level' plan. This plan meets these broad requirements.

(R.R. 74a–75a).

Using the "wrap-around" method permitted by the Debt Act, the debt service schedule has a variance of just over one million dollars between the smallest and largest payments. Based upon its administrative expertise and the facts before it, DCA made a legal determination that this variance is within the law. Petitioners have failed in their

burden of proving that DCA's determination is clearly erroneous. Indeed, the issue presented by petitioners for our review does not attack DCA's legal conclusion that the variance in the debt service schedule complies with the law. Rather petitioners' allegation of error is premised on the lack of an evidentiary hearing upon which to reach the conclusion. We fail to see the necessity for an evidentiary hearing to determine whether the debt service schedule variance in this case complies with the law.

For the foregoing reasons, we affirm the order of the Department of Community Affairs dismissing petitioners' complaint asserting the invalidity of the proceedings of the Bethel Park School District.

## ORDER

NOW, September 6, 1989, the order of the Department of Community Affairs, dated August 15, 1989, is affirmed.