515 A.2d 85

Property Owners, Residents, and/or Taxpayers of the Pleasant Valley School District, Petitioners *v.* Pleasant Valley School District and Commonwealth of Pennsylvania, Department of Community Affairs, Respondents.

Submitted on briefs May 29, 1986, before Judges
CRAIG and PALLADINO, and Senior Judge BARBIERI, sit-
ting as a panel of three.

*Michael Vianello,* for petitioners.

*Jan P. Paden,* with him, *Richard B. Wood, Rhoads
& Sinon,* for respondent, Pleasant Valley School Dis-
trict.

OPINION BY JUDGE PALLADINO, September 15, 1986:
Property owners, residents and/or taxpayers of Pleas-
ant Valley School District (petitioners)[1], appeal the dis-

---

[1] Mike Vianello, as nominal plaintiff for and on behalf of 154
property owners, residents and/or taxpayers of Pleasant Valley
School District, files what he has titled a "Class Action Complaint".
A class action is a procedural device specifically designed to avoid
inconsistent adjudications and multiplicity of suits, providing a ve-

missal of their complaint by the Department of Community Affairs (DCA). The complaint, filed with DCA pursuant to Section 901 of the Local Government Unit Debt Act[2] (Debt Act), challenged the regularity of proceedings by the Pleasant Valley School District (school district) with respect to the issuance of $6,955,000 in general obligation bonds. The purpose of these bonds was to finance a capital project consisting of the construction of additions, alterations and modifications to the Pleasant Valley Junior-Senior High School. In addition, Petitioners challenge DCA's approval of the bond issue.[3]

hicle for litigation of small claims by large numbers of injured persons, and encouraging private enforcement of the law. *Sica v. City of Philadelphia*, 77 Pa. Commonwealth Ct. 97, 101, 465 A.2d 91, 93 (1983). Because this device did not exist at common law, "a would-be class plaintiff *must* find statutory or rule authority permitting a class action in a particular suit." *Id.* (emphasis added); *Freeport Area School District v. Pennsylvania Human Relations Commission*, 18 Pa. Commonwealth Ct. 400, 335 A.2d 873 (1975), *aff'd with modification*, 467 Pa. 552, 359 A.2d 724 (1976). Pa. R.C.P. No. 2230, authorizing class actions, does not apply to proceedings before administrative agencies. *Id.* Neither the enabling statute creating DCA, Section 2501-C of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, added by Section 7 of the Act of February 1, 1966, P.L. 1849 (1965), *as amended*, 71 P.S. §670.101; the Local Government Unit Debt Act, nor the General Rules for Administrative Practice and Procedure, 1 Pa. Code §§31.1-35.251, make specific provision for the maintenance of a class action. Therefore, petitioners may not maintain a class action. However, because each purported member of the class would have standing to challenge the action of school district under the Debt Act, and because it is apparent that DCA treated this as a consolidated proceeding, as they are authorized to do under 1 Pa. Code §35.45, we will treat this as a consolidated appeal. *See* 53 P.S. §6780-401.

[2] Act of July 12, 1972, P.L. 781, *as amended*, 53 P.S. §§6780-1—6780-609.

[3] In their petition for review, petitioners state: "6) Petitioners object to the Department below [DCA] approving the proceedings

In 1982, the Pleasant Valley School Board determined that alterations and additions to its Junior-Senior High School were necessary in order to relieve an overcrowding problem in the district. After receiving project approval from the Department of Education, school district, on June 21, 1984, adopted an amended resolution authorizing and awarding a series of general obligation bonds in the aggregate amount of $6,955,000. Thereafter, on June 29, 1984, school district filed an "Application For Approval To Deliver Bonds Under Provisions of Section 411(a) of the Local Government Unit Debt Act" with DCA.[4]

On July 9, 1984, Mike Vianello and numerous other residents of school district[5] filed a complaint with DCA challenging the proceedings which led to the adoption of a resolution authorizing the bond issue. On July 11, 13, and 23, 1984, additional taxpayers signed the complaint. In all, 154 taxpayers joined the complaint.

On July 23, 1984, an Answer and Motion to Dismiss were filed on behalf of school district. Argument was heard on the motion to dismiss on July 27, 1984, and, on that date, the Complaint was dismissed and the increase of bonded indebtedness of the school district was approved by DCA. Thereafter, petitioners appealed the dismissal of their complaint to this Court.

The instant case is one of first impression in our Courts, presenting for the first time a question of the

---

submitted to it by the school district under the Local Unit Debt Act [sic]." This bald assertion fails to raise any issue for review by this Court and, therefore, we will address only the dismissal of the complaint by DCA.

[4] 53 P.S. §6780-161.

[5] We assume for the purposes of appeal that petitioners have standing to bring this action. We do not hold that any of the 154 petitioners is, in fact, a resident of the school district.

appropriate standard of review under the Debt Act.[6] This Act provides for a quasi-judicial determination, by DCA, of compliance with the requirements of the statute based upon the submission of specified materials. These materials become the evidentiary basis upon which the decision of DCA can be reviewed.

The Debt Act provides a means by which taxpayers of the local government unit, and other "interested parties", may challenge the validity of the proceedings through the filing of a complaint with DCA. 53 P.S. §678-401(a). However, this action is very narrowly prescribed, restricting inquiry into procedural and substantive matters of the local government unit, *taken pursuant to this act,* involving only: 1) the *regularity* of the proceedings, 2) the *validity* of the bonds, and 3) the *legality* of the purpose for which such obligations are to be issued. 53 P.S. §6780-401(b).

Section 902 of the Debt Act provides for appellate review by the Commonwealth Court "of the determination of the department asserting the validity or invalidity of the local government unit proceedings or any part thereof or the error or errors of the department in respect of such proceedings."[7]

Therefore, in an appeal by a complainant from an action of the Department of Community Affairs under the Debt Act, review by the Commonwealth Court of

---

[6] While litigation either under the Debt Act or concerning the Debt Act has been addressed by our Supreme Court, the courts of common pleas, and this Court, the need to address the standard of review question and to evaluate the actions of DCA has not previously been presented. *See, e.g., Bundy v. Belin,* 501 Pa. 255, 461 A.2d 197 (1983); *In Re: Enactment of an Ordinance Increasing Indebtedness of Borough of Blakely,* 41 Pa. Commonwealth Ct. 1, 398 A.2d 237 (1979); *Appeal of German,* 27 Pa. Commonwealth Ct. 108, 366 A.2d 311 (1976).

[7] 53 P.S. §6780-402.

Pennsylvania of an order of the DCA is restricted to whether constitutional rights were violated, an error of law was committed, or whether findings of fact are supported by substantial evidence as set out in Section 704 of the Administrative Agency Law. 2 Pa. C. S. §704.

Petitioners allege numerous grounds for appeal, the major thrust of which stem from their perception that the complaint was dismissed by DCA because of the procedural irregularities of that pleading and its filing. This perception is clearly erroneous.

While the opinion of the Department does make note of the existence of "many deficiencies or irregularities under the General Rules of Administrative Practice and Procedure," it is clear that DCA dismissed petitioner's complaint and approved school district's bond issue because it specifically found that school district had complied with the requirements of the Debt Act. Therefore, we will address the merits of Petitioner's appeal recognizing that DCA did not base its decision on alleged procedural deficiencies and will review DCA's adjudication of the complaint.

The grounds advanced in the complaint are threefold: 1) the people of the community are opposed to the project, 2) numerous objections which pertain to the Open Meeting Law, and 3) objections properly brought under the Debt Act. DCA concluded that it had no jurisdiction over grounds 1 and 2 and found no merit in ground 3. We will consider these issues in order.

### The People of the Community are Opposed to the Project

DCA concluded in its decision that "[t]he wisdom of the decisions of the local government unit or school board in making a determination to proceed with a project is not a matter subject to review by the Depart-

ment. That determination is to be made by the local government." We agree.

Article 9 §10 of the Constitution of the Commonwealth of Pennsylvania provides that "the General Assembly shall prescribe the debt limits of all units of local government including municipalities and school districts." The Debt Act carries out this mandate by limiting the amount of debt a local government unit may incur and providing the means for incurring, evidencing, securing and collecting this debt.

It is axiomatic that administrative agencies are creatures of the legislature and can only exercise those powers which have been specifically conferred upon them, by the legislature, in clear and unmistakable language. *Pennsylvania Human Relations Commission v. Transit Casualty Insurance Co.,* 478 Pa. 430, 387 A.2d 58 (1978); *Western Pennsylvania Water Co. v. Pennsylvania Public Utility Commission,* 471 Pa. 347, 370 A.2d 337 (1977).

The Debt Act is concerned exclusively with compliance by the local government unit with the procedures mandated therein. Consideration of the opinions of petitioners, with respect to whether or not a specific project is necessary or wise, is beyond the authority granted to DCA. We discern no error of law, violation of Constitutional rights nor abuse of discretion in DCA's refusal to consider this allegation.

## MATTERS RAISED UNDER THE OPEN MEETING LAW

Petitioners assert that the grant of exclusive jurisdiction to DCA to hear and determine "all procedural and substantive matters arising from the proceedings of a local government unit taken pursuant to this act, including without limitation the regularity of the proceedings. . . .", 53 P.S. §6780-401, confers jurisdiction upon DCA

to adjudicate violations of the Open Meeting Law.[8] Section 269 of the Open Meeting Law specifically grants original jurisdiction of actions involving "other agencies"[9] to the courts of common pleas to render declaratory judgments or to enforce the act, by injunction or other remedy deemed appropriate by the court.

In their brief, petitioners note that normally jurisdiction to attack a violation of the Open Meeting Law is vested in the "common pleas court or Commonwealth Court." However, they assert that:

> the language of 53 P.S. §6780-401(b) conferring exclusive (original) jurisdiction of matters involving proceedings taken under the Debt Act on [sic] the Department is a *specific statutory exception* to the jurisdiction conferred on the common pleas and Commonwealth Courts [sic] under 65 P.S. §267 to enforce the Open Meeting Law. But that exception would only apply to 'procedural and substantive matters arising from the proceedings of a local government unit taken pursuant to' [the Debt Act (53 P.S. §6780-401(b))] (emphasis added).

We simply cannot agree. If the legislature had intended a "specific statutory exception" to the jurisdictional mandate of the Open Meeting Law it would have so stated in definite terms. *See Department of Environmental Resources v. Steward,* 24 Pa. Commonwealth Ct. 493, 357 A.2d 255 (1976) (upholding the Environmental Hearing Board's dismissal of petitioner's Sunshine Law contentions on the grounds of lack of jurisdiction).

---

[8] Act of July 19, 1974, P.L. 486, *as amended,* 65 P.S. §§261 to 269.

[9] "Other agencies" refers to any agency, as defined by 65 P.S. §261, other than agencies of the Commonwealth. A school district fits within this definition.

Nor can we be persuaded that the legislature meant to imply any such statutory exception. Petitioners would interpret the word "proceedings" as used in the Debt Act to be the equivalent of "meetings" as that term is defined under the Open Meeting Law, 65 P.S. §262. The Debt Act, in very specific terms, prescribes the steps necessary to gain approval of a bond issue. 53 P.S. §§161 and 354. These are the "proceedings" spoken of in Section 901(b). 53 P.S. §6780-401(b). Proceedings does not apply, as petitioner would have us hold, to every step of school district's decision making process in deciding to expand and alter its Junior-Senior High School. Rather, the Debt Act applies only to the legality and constitutionality of the resolution of the school board deciding to issue such bonds and the procedures for the issuance and sale of these bonds. *See* 53 P.S. §§6780-161 and 6780-354. Therefore, DCA has no jurisdiction over alleged violations of the Open Meeting Law.

OBJECTIONS PROPERLY BROUGHT UNDER THE DEBT ACT

Petitioners raised two arguments which deal with the publication requirements of Section 103 of the Debt Act, 53 P.S. §6780-3. They are:

(1) Advertisement of the proposed financing resolution failed to state with specific certainty so as to properly put the public on notice of the exact date, time and place of adoption.

(2) The copy of the resolution for public inspection is not the same as the resolution which was adopted.

The opinion of DCA clearly shows that it considered these arguments and found them to be without merit. We agree. Our review of the record indicates substantial evidence to support DCA's finding that school dis-

trict complied with the publication requirements of Section 103 of the Debt Act. This section contains *no* requirement that the notice of proposed ordinance contain a recital of date, time or place for adoption. Further, this section specifically contemplates the amendment of the ordinance between the public notice thereof and its adoption.

Petitioners also claim that DCA failed to allow amendment of their complaint prior to giving approval to the bond issue, and that this is an abuse of discretion which requires our reversal of their decision. Petitioners never filed a petition for leave to amend and even if they had, this contention is without merit and stems from petitioners' belief that their complaint was dismissed because of procedural irregularities. As we have already stated, the DCA dismissed petitioners' complaint because they concluded that it had no merit. Under 1 Pa. Code §35.49, an agency may decline to permit amendment for good cause. The only grounds upon which petitioners allege that they would amend their complaint are related to procedural deficiencies. Because the DCA did not base its decision to dismiss the complaint upon these deficiencies, we conclude that there was no abuse of discretion in DCA's action.

Finally, petitioners made the following motions which were denied by DCA:

(1) Petition for Change of Place and/or Date of Hearing

(2) Motion that respondent's motion to dismiss be made more definite and certain.

These motions were without merit and were properly denied. A certain time, date and place were set for argument, and published in, among others, the *Pocono Record*. It is not unduly burdensome to require petitioners to travel to Harrisburg for this argument. The DCA routinely conducts its affairs in that city and

requires all petitioners and respondents to travel there. Thus, petitioners were not prejudiced or burdened by this requirement and denial of their motion was not an abuse of discretion.

As to the second motion, the sufficiency of respondent's motion to dismiss was the central issue to be determined at the argument scheduled before DCA. A motion to dismiss resolves all well pled facts and inferences in favor of the non-moving party and tests the legal sufficiency of the complaint. It places the burden of proof on the moving party to show that no issue exists upon which relief could be granted to the non-moving party. Therefore, by the very nature of the proceeding, the sufficiency of respondent's motion to dismiss was tested and there was no abuse of discretion in denying petitioners' motion that respondent's motion to dismiss be made more definite and certain.

DCA adjudicated petitioners' complaint on the merits. Our review of the record indicates that petitioners' findings of fact are supported by substantial evidence, no errors of law were committed, nor constitutional rights violated.

Therefore, we affirm.

#### ORDER

AND NOW, September 15, 1986, the order of the Department of Community Affairs, Hearing Docket No. LGUDA-19, dated July 27, 1984, dismissing Petitioners' complaint is affirmed.