623 A.2d 891

**Barbara H. CONNERS, Appellant,**

v.

**Harold F. FINNEGAN; W. Jack Whitlatch; Ray L. Whipkey,
Supervisors, Richhill Township, Appellees.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 2, 1992.

Decided March 18, 1993.

.Barbara H. Conners, for appellant.

J. William Hook, for appellees.

Before DOYLE and FRIEDMAN, JJ., and E. NARICK, Senior Judge.

DOYLE, Judge.

This is an appeal by Barbara H. Conners from an order of the Court of Common Pleas of Greene County granting a motion for summary judgment filed by Richhill Township (Township) and the Township Supervisors (Supervisors).

This case has a most convoluted procedural history which unfortunately must be set forth in detail. On September 4, 1987, Conners filed in the Court of Common Pleas of Greene County a *pro se* "Petition for Injunctive Relief." In that petition she alleged, *inter alia*, that a resolution was scheduled to be adopted on September 10, 1987 by the Township which would authorize a general obligation note to be given to Aldine

Polen in the amount of $7,000. The note was to be given toward the purchase of certain realty of Polen's which the Township anticipated using for a recreational playground. The note was subject to the following terms: (1) it was payable and due in three years with interest at 10%; (2) the first payment of $2,500 and accrued interest was due in one year; (3) a payment of $2,500 plus accrued interest was due in two years; and (4) a third and final payment of $2,000 plus accrued interest was due in three years from the date of the note. Conners, a taxpayer, maintained, *inter alia*, that no "comparative figures" were obtained to determine the value of the property and she sought to enjoin adoption of the resolution until a complete study concerning the purchase of the proposed recreational site could be made. On the same date Conners filed her petition for injunctive relief she also sought to have a visiting judge specially designated to hear the case due to the local president judge's acquaintance with the Supervisors. President Judge Grimes recused on September 16, 1987 and on November 18, 1987, Judge Kiester was specially appointed by the Supreme Court to hear this case.

In the meantime, the resolution Conners had sought to enjoin was adopted on September 10, 1987, as anticipated. On September 24, 1987, the Supervisors and Township filed preliminary objections to Conners' petition [1] which were sustained by order of December 21, 1987.

Thereafter, Conners, who had been proceeding pro se, obtained an attorney who filed an amended complaint on January 11, 1988. The amended complaint alleged that the resolution had been adopted by the Township and that Polen had been given the note for $7,000 plus interest for the purchase of a lot and house located in Wind Ridge. It was anticipated that the house would be demolished and the lot converted into a park or playground. The complaint also alleged that the Township solicitor had sought $15,000 for a grant-in-aid from the Department of Community Affairs

---

1. The preliminary objections concerned technical matters, not relevant here, a demurrer, and a request to strike certain matters as scandalous and impertinent.

(DCA) to finance the demolition and/or construction of the playground.

Conners maintained that the Township's action in giving the note to Polen was illegal because (a) the Township Recreation Board which had initiated and recommended the project had failed to submit an annual report to the Supervisors in violation of Section 1904 of The Second Class Township Code (Township Code), Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. § 66904; (b) the Township had not followed certain requirements of the Local Government Unit Debt Act (Debt Act), Act of July 12, 1972, P.L. 781, *as amended,* 53 P.S. §§ 6780–1—6780–606, particularly the requirement pertaining to obtaining "cost estimates"; (c) the Township had not followed the advertising and bidding requirements of Section 802 of the Township Code, 53 P.S. § 65802; (d) the Township did not obtain approval from the electors for acquisition of land pursuant to Section 1917 of the Township Code, 53 P.S. § 66917; and, (e) the proposed grant application did not meet the terms of the Recreational Improvement and Rehabilitation Act, Act of July 2, 1984, P.L. 527, *as amended,* 32 P.S. §§ 5401–5408, and its attendant regulations. The complaint also asserted, *inter alia,* that the failure to comply with the above-cited legal provisions constituted arbitrary conduct; that the Township's methods resulted in selection of a site which provided a unique benefit only to selected individuals; and that the Township's decision-making process contained the potential for conflicts of interest.

Conners sought as relief an order halting further project expenditures, a declaration that the acquisition agreement and note were invalid, and a refund of monies paid as well as an assessment of surcharges, in addition to costs and counsel fees. On January 26, 1988, the Township filed a preliminary objection in the nature of a demurrer to the amended complaint.[2] On September 29, 1988, following briefing and argument, the trial court sustained the demurrer except as to the

---

2. We note in passing, that although it does not appear to have been necessary, Conners' moved to transfer the case to the equity side of the court and her motion was granted on January 19, 1988.

violation of the Debt Act. The Township then filed an answer to the remaining allegations. Conners then sought to take depositions and the Township alleged that the subject matter of the depositions was irrelevant to the remaining issue. Disagreements between the parties then arose concerning discovery. Ultimately, the Township filed a motion for a protective order which was granted.

Thereafter, on November 13, 1989, Conners filed a motion for a special injunction asserting that the Township had voted to accelerate the payment schedule to Polen and the demolition project. The trial court denied the motion because Conners had not posted a bond. The parties subsequently stipulated, on December 19, 1989, that the Township would not demolish the property until further order of court.

The next event which occurred was that the Township obtained a new solicitor who, along with his entry of appearance, filed a motion to dismiss the case maintaining that since Polen had now been paid in full the issue of any alleged violation of the Debt Act was moot. Alternatively, the solicitor maintained that exclusive jurisdiction of this issue was with DCA. Conners filed a brief in opposition to the motion to dismiss and sought to join Polen as an additional defendant so that if, in fact, the sales agreement was set aside Polen would be a party in the case.[3] In her brief, Conners asserted that if the trial court determined that it did lack jurisdiction over the remaining issue, it should transfer the case to DCA pursuant to Section 5103 of the Judicial Code, 42 Pa.C.S. § 5103. On September 19, 1990, the trial court directed that the case be transferred to DCA. It did not specifically rule upon Conner's joinder motion[4] or the motion to dismiss on the basis of mootness. Thereafter, at the request of Conners's counsel, the trial court amended its order on October 17, 1990 to clarify

3. This motion to join additional defendant is not in the record filed with this Court. It is unclear when it was filed.

4. It does appear that the trial court assumed Polen would be joined, apparently by agreement of the parties, because in a December 1989 order it indicated that subsequent to such joinder a hearing on the merits would be scheduled. It seems clear, however, that Polen was never joined.

that while the case was transferred to DCA, the court retained jurisdiction over the cause of action.[5]

Thereafter, DCA conducted a pre-hearing conference and requested briefs on the legal issues. The Secretary of DCA determined a hearing would not be required. She then determined that she had jurisdiction to decide the issue and concluded that there had been no violation of the Debt Act. *Her order was not appealed.* The case was then returned to the common pleas court where the Township and Supervisors filed a motion for summary judgment maintaining that since Conners had failed to prevail in her sole remaining count the court should grant the Township's motion. It did. Conners then timely appealed to the Supreme Court. The Supreme Court transferred the case to the Superior Court which in turn transferred the case to this Court.[6]

■ We are now asked to determine whether the trial court correctly granted the Township's motion for summary judgment.[7] That issue, however, involves numerous sub-issues which must be dealt with first. Initially, the Township contends that Conners has waived the Debt Act issue by failing to appeal from the DCA order. We disagree. The trial court's order clearly indicated that it was retaining jurisdiction over the cause of action and, hence, the DCA order, in the context of the proceedings *in this case,* was not final.

■ Next, we must consider whether the DCA was a "tribunal" to which the trial court could properly transfer a case. Section 5103(a) of the Judicial Code, 42 Pa.C.S. § 5103(a), provides:

5. On November 17, 1990, the trial court granted counsel's motion to withdraw, as Conners had discharged him. Also, in another order dated November 23, 1990, the trial court allowed the Township to repair the building on the subject premises to prevent injury and to maintain the yard.

6. We have jurisdiction pursuant to Section 762(a)(4) of the Judicial Code, 42 Pa.C.S. § 762(a)(4).

7. We note that summary judgment may only be granted when there is no genuine dispute of a material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. No. 1035.

If an appeal or other matter is taken to or brought in a court or magisterial district of this Commonwealth which does not have jurisdiction of the appeal or other matter, the court or district justice shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper *tribunal* of this Commonwealth, where the appeal or other matter shall be treated as if originally filed in the transferee tribunal on the date when the appeal or other matter was first filed in a court or magisterial district of this Commonwealth. (Emphasis added.)

The term "tribunal" as used in Section 5103(a) is defined in Section 5103(d) of the Judicial Code, 42 Pa.C.S. § 5103(d), as "a court or district justice or other judicial officer of this Commonwealth vested with the power to enter an order in a matter, the Board of Claims, the Board of Property, the Office of Administrator for Arbitration Panels for Health Care and any other similar agency." [8] We, therefore, hold that the transfer to DCA was valid under this provision, noting that the Secretary of DCA has statewide adjudicatory powers under Section 901 of the Debt Act, 53 P.S. § 6780–401, and can thus enter orders with regard to whether violations of the Debt Act have occurred. *See Barner v. Board of Supervisors of South Middleton Township*, 113 Pa.Commonwealth Ct. 444, 537 A.2d 922 (1988) (holding that for purposes of deciding whether an entity is a tribunal relevant questions are whether it possesses statewide jurisdiction and whether its original jurisdiction involves subjects traditionally identified with the judiciary). Intertwined with this broad general issue is the question of whether *this case* was properly transferred. Section 901 of the Debt Act pertinently provides:

(a) *Where proceedings for the incurring of debt represented by bonds or notes* or by a lease, guaranty, subsidy contract *or other agreement evidencing the acquisition of a capital asset*, for the issuance of tax anticipation notes, or for the exclusion of debt as self-liquidating or subsidized, *have been taken by a local government unit*, such local

8. The term "tribunal" is also defined generally in Section 102 of the Judicial Code, 42 Pa.C.S. § 102.

government unit, or *any taxpayer of the local government unit,* or other interested party *may file with the department* a petition for a declaratory order asserting the validity or *a complaint asserting the invalidity of such proceedings, or any part thereof. Any such complaint asserting the invalidity of such proceedings or part thereof taken under section 409* [pertaining to borrowing small amounts for capital purposes] *may be filed at any time not later than one year after final adoption of the resolution authorizing the debt....*

(b) *Exclusive jurisdiction is hereby conferred on the department to hear and determine all procedural and substantive matters arising from the proceedings of a local government unit taken pursuant to this act, including without limitation, the regularity of the proceedings, the validity of the bonds, notes,* tax anticipation notes or other obligations of the local government unit, *and the legality of the purpose for which such obligations are to be issued.* (Emphasis added.)

Here there were local government proceedings where a debt was incurred by a note for the acquisition of a capital asset by the Township. Thus, the prerequisites for Conners to file a complaint with DCA were present.[9] The Township argues that because in this case it was excused from the filing requirement by Sections 801 and 409 of the Debt Act, 53 P.S. §§ 6780–351, 6780–159,[10] the jurisdictional authority of Section 901 cannot apply. We disagree. Nothing in Section 901 of the Debt Act indicates that DCA has jurisdiction only to adjudicate cases where a local government unit has initiated

**9.** The Township contends that Conners's complaint was filed late. If anything, it was filed early since Conners initiated her cause of action *before* the resolution was adopted. In any event, the amended complaint, which was filed within one year of the resolution's adoption, would cure the ripeness problem.

**10.** Under Section 801, a government body is required before any bonds or notes are delivered to the purchasers to certify to the department a complete and accurate copy of the proceedings that it had for incurring the debt. Under Section 409 of the Debt Act, however, a local government unit need not comply with Section 801's filing requirements if it borrows less than $100,000 for capital purposes.

proceedings before DCA by lodging a mandatory filing. Indeed, Section 901 recognizes the right of an individual, such as Conners, to file a complaint challenging the validity of the proceedings. And, nothing in Section 901 indicates that such taxpayer complaints are prohibited where filing is not mandated. Finally, and most telling, an appeal period is specifically set forth for cases where the local government unit falls under the Section 409 exception, exempting local government units which borrow less than $100,000 for capital purposes. We thus conclude that the Secretary of DCA properly determined she had jurisdiction to decide the legal issue presented.

■ The Township also argues that because the entire bond has been paid off, the case is moot. While the Township's ability to make good on the bond may be moot, the question of whether it complied with the Debt Act requirements is not. Were we to accept the Township's position, a municipality could repeatedly violate the Debt Act yet evade review by speeding up payments where litigation has commenced against it. This Court will not countenance such a negative public policy argument.

■ The next question we must decide is whether the Secretary's legal conclusion that no violation of the Debt Act occurred was correct, because review of the correctness of the trial court's disposition of the motion for summary judgment is dependent upon the legal correctness of the Secretary's determination.

We begin by examining the precise nature of the alleged violation of the Debt Act. Conners maintains that Section 106 of the Debt Act, 53 P.S. § 6780–6, was not complied with because no "cost estimates," *i.e.*, independent appraisals of the value of the subject property, were obtained. (There is no dispute that this was not done although the Township maintains that its minutes indicate that estimated costs for the entire project, including demolition and renovation, were obtained.) Section 106 pertinently provides:

> Prior to the initial authorization of bonds or notes or the issuance of any guaranty to finance any project involving construction or acquisition, the governing body shall obtain

realistic cost estimates through actual bids, option agreements, or professional estimates from registered architects, professional engineers, or other persons qualified by experience....

Section 102 of the Debt Act, 53 P.S. § 6780–2, defines "project" as *inter alia* "any lands or rights in lands to be acquired." Moreover, while Section 106 does not specifically mention appraisers, Section 107, 53 P.S. § 6780–7, which deals with project costs, does when it provides that the cost of a project shall include "payments ... for the acquisition of a project or for lands ... deemed necessary for the project, fees of ... appraisers ... incurred in connection with the project financing costs, ... [and] cost estimates." Thus, Conners's assertion that appraisals should have been obtained appears to be correct.

The Township asserts, however, that since the project was exempted by Section 409 from the filing requirement appearing in Article VIII, Section 801, it is also exempt from the cost estimate provision in Article I. We do not agree. We believe that had the Legislature wished to exempt municipalities from the cost estimate provision in situations where it is exempted from the filing requirements, it would have so provided. Indeed, Section 409 itself, which creates the exception for, *inter alia,* small borrowing, demonstrates as well as anything the Legislature's ability to create an exception when it wishes. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b). Thus, we reject the Township's argument.

Having determined that the Secretary erred in finding no violation of the Debt Act, it follows, *a fortiori,* that the trial court could not properly enter summary judgment for the Township on this basis and, accordingly, we must reverse and remand for further proceedings.

There remain, however, two issues raised by Conners as well as the question of what should be done on remand. Conners maintains that discovery should not have

been limited merely to whether the Supervisors violated the Debt Act. We disagree. Only the Debt Act issue remained after the preliminary objections to the amended complaint were sustained and Conners has not briefed dismissal of the other counts on appeal. Hence, they are waived and we hold that the trial court properly limited discovery.

Conners also maintains that Polen should have been joined as an additional defendant in the case. Inasmuch as we have held that the Debt Act was violated and consequently the Township's sales agreement is now void, the joinder of Polen, while it may have been desirable, is no longer necessary for purposes of voiding the agreement.[11] Polen's joinder is necessary, however, for the purpose of determining whether Polen owes the Township a refund. We leave it to the trial court to determine, after joining Polen, whether a refund is due the Township from Polen and what sums are due Conners for costs and counsel fees.[12]

Reversed and remanded.

## ORDER

NOW, March 18, 1993, the order of the Court of Common Pleas of Greene County in the above-captioned matter is hereby reversed and this case is remanded for further proceedings consistent with this opinion. The Chief Clerk is directed to mail a copy of this order to the Secretary for the Department of Community Affairs.

Jurisdiction relinquished.

---

11. We note that the Township could, if it wishes, attempt to reacquire the property once it has complied with Section 106 of the Debt Act.

12. While surcharges were requested against the Supervisors, we can find no authorization in the Township Code for such a sanction based on a violation of the Debt Act.