Jeffrey Adams WARD, Petitioner,

v.

COMMONWEALTH of Pennsylvania,
DEPARTMENT OF COMMUNITY
AFFAIRS, Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 1996.
Decided Nov. 21, 1996.

Jeffrey L. Pettit, Philadelphia, for Petitioner.

Barry H. Boise, Philadelphia, for Intervenors, Borough of Kennett Square and Kennett Square Borough Council.

Before PELLEGRINI and LEADBETTER, JJ., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Jeffrey Adams Ward petitions for review of an order of the Department of Community Affairs (DCA) granting the motion of the Borough of Kennett Square (Borough) and the Kennett Square Borough Council (Borough Council) to dismiss Ward's complaint.

On November 29, 1995, the Borough filed an application with DCA, pursuant to Section 411 of the Local Government Unit Debt Act (Debt Act),[1] for approval of guaranteed revenue bonds in the amount of $4,525,000. The bonds were to be issued to finance the construction of a parking garage in the Borough. As part of the application, the Borough filed a debt statement listing, *inter alia,* the gross indebtedness of the Borough.[2] Included in the category entitled "General Obligation Notes, Non-electoral" was a bond issuance of 1993 in the amount of $10,000,000. The 1993 issuance was listed with a representation that "there has been no increase or decrease in the amount on non-electoral debt originally excluded as self-liquidating debt by any change of circumstances other than decreases resulting from the payment of the DVRFA [Delaware Valley Regional Finance Authority] Debt referred to above."

Ward filed a complaint with DCA pursuant to Section 901 of the Debt Act, 53 P.S. § 6780–401, challenging the validity of the proposed bond issue. Ward alleged the following: (1) that there was improper notification of a public meeting on the bond issue; (2) that a meeting was held to discuss financing of the parking garage in violation of the Sunshine Act; (3) that the parking garage will benefit private enterprise; (4) the copy of the debt statement obtained from Borough Council contains different figures than the debt statement obtained from the attorneys representing the underwriters of the bonds for the parking garage; (5) the debt statement represents that there was no change in circumstances while there was in fact a change; (6) taxpayers will ultimately be held responsible for the debt incurred in the event of a default; and (7) the construction of a parking garage is not provided for in the Borough's comprehensive plan. The Borough and the Borough Council filed a motion to dismiss Ward's complaint.

A presiding officer was appointed and oral argument was heard on the motion to dismiss. The presiding officer issued a report in which he found that several allegations in the complaint were not within the jurisdiction of DCA. The remaining allegations in the complaint were reduced to three basic objections: (1) the project lacks a public purpose; (2) the project's cost was underestimated by at least $800,000; and (3) the Borough's certification as to the status of previous exclusions for self-liquidating debt was improper.

The presiding officer found that even if a private company would gain by the construction of the parking garage, that fact alone would not serve to change the character of the garage as having a basic public purpose. The presiding officer found that the pleadings provided no indication that the Borough in any way acted outside of the discretion granted to it in proposing the project.

In regard to Ward's second argument that the project's cost was underestimated, the presiding officer, cited this Court's decision in *Borough of Brentwood v. Department of Community Affairs,* 657 A.2d 1025 (Pa. Cmwlth.1995), which held that uncertainty about specific details cannot be considered

---

**1.** Act of July 12, 1972, P.L. 781, *as amended,* 53 P.S. §§ 6780–161.

**2.** Section 410(a) of the Debt Act, 53 P.S. § 6780–160, requires that the local governmental unit prepare a debt statement as of a date not more than 60 days before the filing. The debt statement must list the gross indebtedness of the local government unit, the claimed credits and exclusions from gross indebtedness aggregate principal amount of the bonds being issued, the borrowing base of the local government unit and the applicable nonelectoral debt limit and the limit for nonelectoral plus lease rent debt.

proof that the cost estimates were unrealistic and that such unrealistic estimates constituted fraud.

In regard to the final argument, the presiding officer found that under Section 206(b) of the Debt Act, 53 P.S. § 6780–56(b), exclusions are protected during the period of a project's construction and for a reasonable period thereafter. The presiding officer recommended that Ward's complaint be dismissed and the bond issue of the Borough be approved. On January 3, 1996, DCA granted the motion and dismissed Ward's complaint. Ward now appeals to this Court.

On appeal, Ward contends that (1) the incurrence of new debt triggers the duty of DCA to review its prior approval to exclude debt as self-liquidating even when the project financed through the self-liquidating debt is under construction and (2) the obvious private nature of the parking garage, the discrepancy in the costs of the parking garage and conflicting statements of Borough officials raises genuine issues of fact sufficient to preclude the Borough's motion to dismiss.

■■■ Section 901 of the Debt Act provides a means by which taxpayers and other interested parties may challenge the validity of the proceedings in which a local government unit incurs bonded debt. 53 P.S. § 6780–401. However, this challenge is very narrowly circumscribed, restricting inquiry into procedural and substantive matters arising from the proceedings of the local government unit taken pursuant to the Debt Act and involving only: (1) the regularity of the proceedings; (2) the validity of the bonds, and (3) the legality of the purpose for which the bonds are issued. *Simonetti v. Department of Community Affairs*, 651 A.2d 626 (Pa.Cmwlth.1994), *petition for allowance of appeal denied*, 540 Pa. 652, 659 A.2d 990 (1995). In an appeal from a DCA action under the Debt Act, our scope of review is restricted to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Id.*

Ward's first argument concerns the $10,-000,000 general obligation note issued by the Borough in 1993 to finance a spray irrigation project. The note was approved by DCA as self-liquidating. Ward contends that the scope of the project has changed substantially and that the original financial projections, that revenues would pay the debt service, are no longer valid. Ward further contends that if a portion of the sewer bonds was deemed not to be self-liquidating, then the added debt for construction of the parking garage would cause the Borough to exceed its debt limit of $7,735,043.

■■ Ward argues that DCA erred in interpreting Section 206(b) as precluding inquiry into a previously approved bond issue during the period of the project's construction. Ward contends that the event which terminates the exclusion of the self-liquidating debt is the point at which new electoral, nonelectoral or lease rental debt is to be incurred.

Section 206(b) of the Debt Act provides as follows:

> If the department shall approve the exclusion of the principal amount of bonds, notes or obligations or bonds or notes of an authority or another local government unit secured by an instrument evidencing lease rental debt stated in such report as being self-liquidating debt, as being in accordance with law, it shall endorse its approval upon a duplicate original of the proceedings and return the same to the local government unit. Upon receipt of such approval by such local government unit, *such principal amount of bonds, notes or obligations shall be excluded from nonelectoral debt or net lease rental debt, as the case may be, during the period of construction and thereafter until new electoral, nonelectoral or lease rental debt is to be incurred,* at which time, if such principal is to be excluded, a certification of no decrease, other than decreases resulting from the payment of bonds or notes, in the amount to be excluded shall be included in the debt statement to be filed pursuant to section 410 of this act. If there is a decrease, or if more of such debt is desired to be excluded as self-liquidating, a new certification shall be filed

53 P.S. § 6780–56(b) (emphasis added).

A plain reading of Section 206(b) indicates that self-liquidating debt is excluded during

the period of construction and for the period thereafter until new debt is to be incurred.[3] Ward's interpretation of Section 206(b), that the exclusion terminates when new debt is to be incurred, reads out of the statute the phrase "and thereafter." It is well settled that the legislature is presumed not to have intended provisions in its laws as mere surplusage; courts must construe a statute, if possible so as to give effect to every word, sentence or provision thereof. *Masland v. Bachman*, 473 Pa. 280, 374 A.2d 517 (1977).

■ Ward also argues that Section 410(b) contains no exception for debt incurred for projects still under construction. Section 410(b) provides:

> Where debt has previously been excluded as self-liquidating or subsidized debt, the debt statement shall be accompanied by a certification that no decrease in the amounts to be excluded is required by any change of circumstances, or if there has been a change, other than decreases resulting from the payments of bonds or notes, so that less debt is to be excluded or if it has become possible to exclude a greater amount of debt, and the local government unit desires to do so, the debt statement shall be accompanied by appropriate certificates supporting the revised amount to be excluded and a revised approval shall be obtained from the department.

53 P.S. § 6780–160(b).

Section 410(b) requires only that the government unit file a certification that there has been no decrease in the amount of excluded debt, other than a decrease resulting from the payment of the bond or note. If the government unit desires to increase the amount of excluded debt, Section 410(b) requires that a revised approval be obtained from DCA. In the case before us, the Borough submitted a certification that there was no increase or decrease in the amount of self-liquidated debt to be excluded other than decreases resulting from the payment of the debt. Because the Borough was not seeking to increase the amount of debt to be exclud-

ed, therefore, it was not required by Section 410(b) to seek a revised approval from DCA.

■ Ward next argues that DCA erred in dismissing his complaint where there were genuine issues of material fact. Ward contends that the affidavit submitted by the Borough, stating that the parking garage would be open to the public on a first come— first served basis, creates an issue of fact because the affiant's credibility is at issue. Ward cites *White v. Owens–Corning Fiberglas, Corp.*, 447 Pa. Superior Ct. 5, 668 A.2d 136 (1995) for the proposition that a witness' credibility creates a genuine issue of material fact.

■ A motion to dismiss resolves all well-pled facts and inferences in favor of the non-moving party and tests the legal sufficiency of the complaint. *Property Owners, Residents, and/or Taxpayers of Pleasant Valley School District v. Pleasant Valley School District*, 100 Pa.Cmwlth. 513, 515 A.2d 85 (1986). It places the burden of proof on the moving party to show that no issue exists upon which relief could be granted to the non-moving party. *Id.*

The Borough attached to its motion to dismiss an affidavit from Douglas P. Marguriet, the Borough Manager which averred that "the parking garage, as planned, will be a public parking facility, open to the public on a first come first served basis, and no portion of which will be set aside or reserved for the use of any private corporation or enterprise." (Reproduced Record, p. 44a.) In response to the Borough's motion, Ward submitted an affidavit signed by himself and two others, stating that "[o]n or about Monday, December 11, 1995, Douglas P. Marguriet, Borough Manager, stated 'Genesis would need seventy percent (70%) of the parking garage, leaving one hundred and five (105) spaces for the general public'." (Reproduced Record, p. 57a.)

In his report, the presiding officer viewed the affidavit submitted by Ward in the light most favorable to him. The presiding officer assumed that the parking garage would be heavily used by a private company and that private gain would result in the building of

---

**3.** The parties do not dispute that the spray irriga-  tion project is still under construction.

the garage. However, the presiding officer, relying on *Campbell v. Bethlehem Parking Authority*, 20 Pa.Cmwlth. 445, 342 A.2d 114 (1975), concluded that these facts would not serve to change the character of the garage as having a basic public purpose. The presiding officer did not base his recommendation that the Borough's motion be granted on Marguriet's affidavit.

Ward argues that the analysis in *Price v. Philadelphia Parking Authority*, 422 Pa. 317, 221 A.2d 138 (1966), and not the analysis in *Campbell*, controls the disposition of this case. In *Price*, the Supreme Court held that the primary and predominant purpose of a parking garage was private in nature. In that case, the parking authority was to acquire land from a developer, demolish an existing structure and construct a parking garage on the site. The developer was to be permitted to devote substantial portions of the ground and basement levels of the garage to its own purposes and to sublet other portions to private commercial enterprises. The developer was to lease and operate the garage and also construct a high-rise apartment building over the garage. The developer was also given an exclusive option to acquire the land and the garage. Further, through the construction of the parking garage, the developer would be able to meet the requirement of the Philadelphia Zoning Code that he provide approximately 500 parking spaces for the tenants in the proposed apartment building.

In *Campbell*, the appellant sought to enjoin the construction of a parking garage on the ground that it was to be constructed for the predominant purpose of serving two private companies. On appeal, the appellant relied on the Supreme Court's decision in *Price*. The Court distinguished *Price* on the

basis that there was not the substantial degree of public involvement and investment in a private profit-making venture as was found in *Price*. The Court held that the parking garage was predominantly and primarily a public use and that any private gain by the private companies was merely incidental.

We believe that *Price* is distinguishable on the facts. In the case before us, there is no allegation in Ward's complaint that the private company would operate the parking garage, or that a certain portion of the parking garage would be reserved for use of the company, or that the company would be assisted in complying with any Borough ordinance through the construction of the parking garage. Thus, there is no public involvement and investment in a private profit-making venture of the type that was found in *Price*. As in *Campbell*, the gain to the private company is merely incidental.

■ We conclude that DCA did not err in dismissing Ward's complaint.[4] Accordingly, the order of DCA is affirmed.

LEADBETTER, J., concurs in the result only.

### ORDER

AND NOW, this 21st day of November, 1996, the order of the Department of Community Affairs in the above-captioned matter is hereby affirmed.

---

**4.** In the statement of questions presented, Ward alleged that there was a discrepancy in the costs of the parking garage and that Borough officials made conflicting statements about the garage. Because Ward did not develop these arguments in his brief, we consider these arguments waived. *See Mason & Dixon Lines, Inc. v. Mognet*, 166 Pa.Cmwlth. 1, 645 A.2d 1370 (1994).