**COUNTY OF NORTHAMPTON,**
Petitioner,

v.

**DEPARTMENT OF COMMUNITY AND ECONOMIC DEVELOP-MENT, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 12, 2001.

Decided Oct. 30, 2001.

William P. Leeson, Bethlehem, for petitioner.

Brian M. Monahan, Easton, for intervenors.

No appearance entered for respondent.

Before KELLEY, J., FLAHERTY, Senior Judge, and JIULIANTE, Senior Judge.

FLAHERTY, Senior Judge.

The County of Northampton (County) appeals from an order of the Department of Community and Economic Development (DCED or Department) which disapproved the application for the issuance of debt by the County. The issue raised is whether DCED has authority to go beyond an examination of the documents evidencing the bond proceedings filed with it by a local unit of government seeking approval of a bond issue by conducting a hearing to determine whether the local unit obtained realistic cost estimates even though no question of fraud is raised. We reverse.

■ On June 15, 2000, Northampton County Council (Council) passed an ordinance (bond ordinance) which provided for up to $125,000,000.00 in capital improvements to be financed by 30 Year Series 2000 bonds to be issued by the Northampton County General Purpose Authority (Authority) under the Local Government Unit Debt Act (Debt Act), 53 Pa.C.S. §§ 8001–8271.[1] The capital improvement

---

**1.** The Debt Act establishes controls over a local government which seeks to borrow money on bonds or notes. 53 Pa.C.S. § 8001(d). The purpose of the Debt Act is to require disclosure of a project to ensure lawfulness and public notice, while respecting the discretion of a governmental body to pursue a major construction project in a reasonable

projects included county general improvement projects and authority economic development projects.

On July 10, 2000 County filed an application for approval of the incurrence of lease rental debt with the Department seeking a certificate of approval pursuant to 53 Pa. C.S. § 8204. On July 24, 2000, Bernard V. O'Hare, III, Joseph S. DeRaymond, William H. Hummel, Bernard J. Berg and James E. Byrne (collectively, Intervenors) filed a complaint with the Department containing eight counts challenging the debt proceedings.[2] The Department dismissed counts 4, 5, 6 and 8 and thereafter held an evidentiary hearing to address counts 1, 2, 3 and 7. Before the hearing commenced, County filed a motion to dismiss count 7 of the complaint. Count 7 of the complaint alleged that the governing body, Council, failed to obtain realistic cost estimates for the proposed capital projects as is required by Section 8006 of the Debt Act.[3] County argued that the Department did not have the authority to conduct a hearing in the absence of allegations that the bond proceedings resulted from fraud. The Department denied the motion to dismiss and after conducting a hearing determined that Council failed to obtain realistic estimates as required by the Debt Act. As such, the Department upheld count 7 of the com-

plaint and disapproved the debt proceedings.[4] This appeal followed.

 County argues that the Department erred in conducting a hearing as to count 7 of the complaint because Intervenors never alleged fraud and the Department's decision that Council failed to obtain realistic cost estimates is not supported by substantial evidence. Our review in considering an appeal from an action by the Department under the Debt Act is restricted to determining whether constitutional rights were violated, whether an error of law was committed or whether findings of fact are supported by substantial evidence. *Borough of Brentwood*, 657 A.2d at 1027 n. 3.

 Initially, we observe that the Debt Act provides a means by which taxpayers may challenge the validity of proceedings in which a local government, has incurred bonded indebtedness. *Id.* at 1027. This challenge is very narrow however, restricting inquiry into procedural and substantive matters arising from proceedings of the local government taken pursuant to the Debt Act and involving only: (1) the regularity of the proceedings; (2) the validity of the bonds; and (3) the legality of the purpose for which such obligations are to be issued. *Id.*

and business-like manner. *Borough of Brentwood v. Dept. of Community Affairs*, 657 A.2d 1025, 1027 n. 5 (Pa.Cmwlth.1995).

2. Intervenors also filed a complaint with the Court of Common Pleas of Northampton County (trial court). On August 28, 2000, the trial court sustained the preliminary objections filed by County, which sought dismissal for lack of jurisdiction. County argued that exclusive jurisdiction over the complaint rested with the Department. In an opinion authored by Senior Judge Jiuliante, this court affirmed in part, reversed in part and remanded for further proceedings. *O'Hare v.*

*County of Northampton*, 782 A.2d 7, (Pa. Cmwlth.2001).

3. In accordance with 53 Pa.C.S. § 8006, the governing body, in this case Council, is required, prior to the issuance of any guaranty to finance any project involving construction or acquisition, to obtain "realistic cost estimates through actual bids, option agreements or professional estimates from registered architects, professional engineers or other persons qualified by experience."

4. The Department also dismissed counts 1, 2 and 3 of the Complaint.

■ County argues that the Department erred in conducting a hearing because in accordance with *Bethel Park Citizens v. Department of Community Affairs,* 128 Pa.Cmwlth. 439, 563 A.2d 969 (1989), *Simonetti v. Department of Community Affairs,* 651 A.2d 626 (Pa.Cmwlth.1994), *petition for allowance of appeal denied,* 540 Pa. 652, 659 A.2d 990 (1995), *Borough of Brentwood,* and *Ward v. Department of Community Affairs,* 685 A.2d 1061 (Pa. Cmwlth.1996) fraud must be alleged before a hearing is conducted. We agree.

In *Bethel Park,* the taxpayers maintained that a proposed project, as described in the school district's debt resolution, did not exist and argued that the Department erred in not conducting a hearing. This court stated that "[i]f fraudulent conduct is alleged and supported by specific allegations, an evidentiary hearing before [Department], in that instance, would be appropriate. In this action, however, no such fraud is averred." *Id.* at 972.

In *Simonetti,* this court, relying on *Bethel Park,* again stated that "only if fraudulent conduct is alleged and supported by specific allegations, is an evidentiary hearing before the [Department] appropriate, as fraud goes to 'the heart of the legality of the proceedings'.... Petitioners have not alleged that these proceedings were prepared as a result of fraud on the part of any party, and without an allegation and some evidence of fraud we may not look beyond the four corners of the documents filed with the application." *Simonetti,* 651 A.2d at 629 (citation omitted).

In *Borough of Brentwood,* the petitioners maintained "that either the cost estimates obtained were not reasonable or in several circumstances, were not obtained at all." *Id.* at 1027. We observed that in accordance with *Simonetti,* "only if fraudu-

lent conduct is alleged and supported by specific allegations, is an evidentiary hearing before the [Department] appropriate, as fraud goes to the 'heart of the legality of the proceedings.' " *Brentwood,* 657 A.2d at 1027 (citation omitted). The petitioners in *Brentwood* claimed that an estimate for asbestos removal was unrealistic and unfounded because an architect conceded on cross examination that he did not know what the actual cost would be. Additionally, the petitioners claimed that the school district failed to include estimates as to the cost of playground improvements, sewer and water connections. This court stated that "[e]ven if these allegations were true, they do not support a finding of fraud which would allow the introduction of evidence before the [Department]. The law is clear that the local government unit need only provide a brief description of the project, adequate to inform the public of its general plan and to enable the [Department] to ascertain legality." *Brentwood,* 657 A.2d at 1028.

Most recently in *Ward,* the petitioners challenged bond proceedings arguing that the project lacked a public purpose and that the project's costs were underestimated. This court stated that "uncertainty about specific details cannot be considered proof that the cost estimates were unrealistic and that such unrealistic estimates constituted fraud." *Id.* at 1062–63.

Intervenors maintain that the above cases are distinguishable because they either involved questions of law, which did not require a hearing, or the cases did not involve an allegation as is the case here, that Council failed to obtain *any* cost estimates as to certain projects. We disagree. All of the cases referenced specifically state that fraud must be alleged and supported by specific allegations for a hearing

before the Department to be appropriate.[5] Additionally, although 12 Pa.Code § 11.12(a) permits the Department to "schedule a hearing to determine procedural and substantive matters within the jurisdiction of the Department. ...." this court has consistently held, that "only if fraudulent conduct is alleged and supported by specific allegations, is an evidentiary hearing before the [Department] appropriate, as 'fraud goes to the heart of the legality of the proceedings.' " *Simonetti*, 651 A.2d at 629 (citation omitted.) "A requirement that an evidentiary hearing be held in all instances would permit disgruntled taxpayers, who were unable to convince the [local government unit] that its decision was unwise or incorrect, to raise legal roadblocks which would delay or even block such a decision.... In general, administrative and judicial authorities will neither invade nor supplant the legislative competence of the local government unit, absent a showing of fraud or abuse." *Id.* at 628–29. (citations omitted.)

Moreover, *Borough of Brentwood*, involved a fact pattern similar to the one currently before us. As previously stated, the petitioners alleged in that case that "cost estimates obtained were not reasonable or in several circumstances, *were not obtained at all.*" *Id.* 657 A.2d at 1027 (emphasis added). Specifically, petitioners maintained that the school district failed to include estimates of costs for playground equipment and sewer and water connections. Intervenors have similarly alleged in this case, that Council failed to obtain

cost estimates as to certain projects. We stated in *Borough of Brentwood*, that "[e]ven of these allegations were true, they do not support a finding of fraud which would allow the introduction of evidence before the [Department]." *Id.* at 1028.

■ Intervenors also argue that the failure to obtain realistic cost estimates is supported by the fact that County failed to aver in its application to the Department that realistic cost estimates were obtained and the ordinance itself, attached to the application, similarly failed to aver that Council obtained realistic cost estimates. Contrary to Intervenors assertion, we find no requirement in the Debt Act which requires County to aver that Council has obtained realistic cost estimates in its application to the Department and Intervenors fail to cite to any authority in the Debt Act in support of such a proposition. Section 8006 of the Debt Act states that prior to the initial authorization of bonds, "the governing body shall obtain realistic cost estimates. ...." However, there is no requirement that such a statement accompany the County's application. Moreover, Section 8111 of the Debt Act which identifies those items that must be included by the local government in its application to the Department, does not require an averment by the local government that realistic cost estimates were obtained.

■ Because Intervenors failed to allege fraud, supported by allegations, Department erred in conducting a hearing.[6]

---

5. Although Intervenors reference *Conners v. Finnegan*, 154 Pa.Cmwlth. 284, 623 A.2d 891 (1993), that case is distinguishable. In *Conners*, this court concluded that the Debt Act was violated because no cost estimates, i.e. independent appraisals of the subject property were obtained. Similarly, Intervenors argue that the County violated the Debt Act by not obtaining independent appraisals of certain projects in this case. In *Conners*, we

observe that the Department did not conduct a hearing and unlike the present situation, the township in *Conners* did not dispute that independent appraisals of the subject property were not obtained.

6. Intervenors argue that to the extent it was required to aver fraud or abuse, they have done so. Specifically, they maintain that count 2, averred a breach of fiduciary duty,

Accordingly, the order of the Department is reversed.

### ORDER

Now, October 30, 2001, the order of the Department of Community and Economic Development dated March 20, 2001 at No. LGUDA 85 is reversed.

count 3 alleged that the County's adoption of the bond ordinance constituted bad faith, abuse of discretion, and arbitrary and capricious action and count 7 alleged that Council abdicated its statutory responsibility by failing to obtain cost estimates. As stated in *Borough of Brentwood*, "while it may be unnecessary to use the word 'fraud', it is necessary to set forth all the elements of a fraudulent action. These elements are false representation of an existing fact, knowledge, reliance and damage." *Id.* at 1027, n. 4. Intervenors have "not set forth the necessary elements for a fraudulent action, which would require the [Department] to allow the introduction of evidence under *Simonetti* . . . ." *Id.*