111 Pa. Commonwealth Ct. 377 (1987)
533 A.2d 1119
William B. Mellinger, Joerg W. P. Mayer and Ruth C. Beachler, Petitioners
v.
Commonwealth of Pennsylvania, Department of Community Affairs, and Annville-Cleona School District, Lebanon County, Pennsylvania, Respondents.
Dennis R. Marshall and Annville-Cleona Taxation Advisory Committee, Petitioners
v.
Commonwealth of Pennsylvania, Department of Community Affairs, Respondents.
Nos. 963 C.D. 1986 and 254 C.D. 1987.
Commonwealth Court of Pennsylvania.
Argued September 15, 1987.
December 1, 1987.
Argued September 15, 1987, before Judges CRAIC and MacPHAIL and Senior Judge NARICK, sitting as a panel of three.
*378 James A. Snell, for petitioners.
Henry G. Barr, with him, Richard B. Wood, Jens H. Damgaard, Rhoads & Sinon, for respondent, Annville-Cleona School District.
OPINION BY JUDGE MacPHAIL, December 1, 1987:
The matter before us for disposition involves two petitions for review, consolidated for our consideration, from orders of the Department of Community Affairs (DCA). In the petition docketed at 963 C.D. 1986, William B. Mellinger, Joerg W. P. Mayer and Ruth C. Beachler challenge the DCA's dismissal of their complaint which had alleged that a $2,950,000 bond issue proposed by the Annville-Cleona School District (District) on February 10, 1986, was invalid. The petition docketed at 254 C.D. 1987 involves the DCA's dismissal of a similar challenge brought by Dennis R. Marshall and the Annville-Cleona Taxation Advisory Committee to a $4,900,000 bond issue proposed by the District on December 2, 1986. For the reasons which follow, we affirm the dismissal of both complaints.
*379 Two of the issues raised in these consolidated appeals are identical: (1) whether or not the DCA erred in dismissing Petitioners' complaints based on the District's motions to dismiss without first affording Petitioners an evidentiary hearing, and (2) whether the District was required to obtain the assent of the electorate prior to increasing its bonded indebtedness. In addition, Petitioners in the appeal docketed at 254 C.D. 1987 have raised the issue of whether DCA erred in approving as legal the purpose for which the District proposed to increase its indebtedness prior to final approval of the project by the Department of Education.
The gravamen of the complaints filed with the DCA is Petitioners' contention that the District has improperly sought approval from DCA of "electoral" debt without first gaining the approval of the electorate pursuant to Section 632 of the Public School Code of 1949 (Code), Act of March 10, 1949, P.L. 30, as amended, 24 P.S. §6-632. Section 632 provides, pertinently, as follows:
The assent of the electors shall be required in all school districts of the second, third and fourth class, to issue bonds which will incur any new debt or increase the indebtedness to an amount in excess of five (5) per centum of the assessed valuation of property taxable for school purposes therein . . . . The board of school directors of any school district of the first, first class A, second, third, or fourth class shall have authority, without the assent of the electors, to issue bonds which will incur upon its own authority any amount of such indebtedness not in excess of five (5) per centum of the last assessed valuation of property taxable for school purposes therein.
As a factual matter, the District does not dispute that it is a fourth class district and that the increase in indebtedness *380 proposed in each of the challenged bond issues in the matter at bar does exceed 5% of the assessed valuation of taxable property in the District. The District also acknowledges that it has now sought the approval of the electorate in increasing its bonded indebtedness.
The District contends, however, that the assessed valuation approach to differentiating electoral from nonelectoral debt employed by Section 632 of the Code is no longer applicable. Instead, the District contends that nonelectoral borrowing limits are now controlled by Section 202 of the Local Government Unit Debt Act (Debt Act), Act of July 12, 1972, P.L. 781, as amended, 53 P.S. §6780-52, which provides, inter alia, as follows:
(a) Except . . . as otherwise specifically provided in this act, no local government unit shall incur any new nonelectoral debt, if the aggregate net principal amount of such new nonelectoral debt together with all other net nonelectoral debt outstanding would cause the total net nonelectoral debt of such local government unit to exceed:
. . . .
(iii) two hundred fifty per cent of its borrowing base in the case of any other local government unit.
Section 102 of the Debt Act, 53 P.S. §6780-2, further defines the term "borrowing base" to mean the annual arithmetic average of the total revenues received by the government unit during the last three full fiscal years preceding the date of incurring the new nonelectoral debt.[1]
*381 Applying these provisions to the facts of the instant case, it is undisputed that the increases in indebtedness proposed by the District would fall well within the limits set by the Debt Act for nonelectoral debt. On the other hand, it is also conceded by the District that if the terms of Section 632 of the Code are applicable, then the approval of the electorate would have to be obtained in order to incur the increase in debt since each of the proposed bond issues clearly exceeds 5% of the assessed value of taxable property in the District.
Given the absence of any factual disputes, the issue framed for our resolution is one purely of law, to wit, whether the District's nonelectoral debt limit is controlled by Section 632 of the Code or Section 202 of the Debt Act. The District contends that Section 632 of the Code has been repealed by the Debt Act and that the debt limits embodied in the Debt Act, therefore, are controlling. We agree.
Section 1304 of the Debt Act, 53 P.S. §6780-604, which was enacted on July 12, 1972, states that "[h]ereafter a local government unit, as defined in this act, may borrow money on bonds or notes, including tax anticipation notes, only as provided in this act, it being the intention that this act shall provide an exclusive and uniform system on the subjects covered by this act . . . ." (Emphasis added.) The term "local government unit" is defined in Section 102 of the Debt Act, 53 P.S. §6780-2, to include school districts. Moreover, Section 1307 of the Debt Act, 53 P.S. §6780-607, provides that "[a]ll *382 acts and parts of acts are repealed in so far as they are inconsistent herewith."
Contrary to Petitioners' argument, we think it is clear that the provisions of Section 632 of the Code and Section 202 of the Debt Act are, indeed, inconsistent in the manner in which the respective nonelectoral debt limits for school districts are set. The undisputed facts of the instant case illustrate this point quite clearly. In view of that inconsistency, we conclude that Section 1307 of the Debt Act operates to repeal Section 632 of the Code. We further note that the Debt Act, in addition to specifically repealing all inconsistent parts of other acts, was enacted subsequent in time to Section 632 of the Code[2] and therefore would prevail over the terms of Section 632 pursuant to Section 1936 of the Statutory Construction Act of 1972, 1 Pa. C. S. §1936, which provides as follows:
Whenever the provisions of two or more statutes enacted finally by different General Assemblies are irreconcilable, the statute latest in date of final enactment shall prevail.
Accordingly, we hold that Section 202 of the Debt Act is controlling with regard to the appropriate limits of the District's nonelectoral debt.[3] Thus, Petitioners' challenge *383 to the District's proposed increase in nonelectoral bonded indebtedness was properly rejected by DCA on the merits. Pursuant to the limits set by Section 202 of the Debt Act, the District could properly increase its debt in the proposed amounts without first seeking the approval of the electorate.
We turn next to the procedural issue raised by Petitioners regarding the propriety of DCA's action in dismissing their complaints based on the District's motions to dismiss without affording them a full evidentiary hearing. Section 35.54 of the General Rules of Administrative Practice and Procedure, 1 Pa. Code §35.54,[4] provides that an answer to a complaint may include "a motion to dismiss a complaint because of lack of legal sufficiancy appearing on the face of the complaint." The Rules also make special provision for action on motions as follows:
The presiding officer designated to preside at a hearing is authorized to rule upon any motion not formally acted upon by the agency head prior to the commencement of the hearing . . . except that no motion made before or during a hearing, a ruling upon which would involve or constitute a final determination of the proceeding, shall be ruled upon by a presiding officer except as a part of his proposed report submitted after the conclusion of the hearing. A presiding officer may refer any motion to the agency head for ultimate determination. The agency head will rule upon all other motions and upon such motions as as presiding officers may certify to the agency head for disposition.
1 Pa. Code §35.180(a).
*384 In the instant matter, the District, after admitting all material facts alleged in the complaints, filed motions to dismiss pursuant to 1 Pa. Code §35.54. The presiding officers subsequently scheduled and heard oral argument on the motions and referred their recommendations to dismiss the complaints to the Secretary of DCA. By orders dated March 25, 1986 and January 22, 1987, respectively, the Secretary of DCA dismissed the complaints. We conclude that this procedure was clearly proper and in accord with applicable rules. Moreover, given the District's admission of all material facts alleged by Petitioners in their complaints, evidentiary hearings were not in order. The motion to dismiss would appear to have been the most appropriate means for obtaining prompt resolution of the legal issues presented. We cannot agree with Petitioners that Section 504 of the Administrative Agency Law, 2 Pa. C. S. §504, requires that an evidentiary hearing be held in every case regardless of the existence of disputed facts. Petitioners here were afforded an adequate opportunity to be heard on the legal issues presented by their complaints. The Administrative Agency Law requires no more. Accordingly, we must reject Petitioners' procedural challenge.
The final issue raised for our consideration, which relates solely to the appeal docketed at 254 C. D. 1987, is whether DCA can properly conclude that the purpose for which a bond issue is proposed is legal absent prior approval of the project by the Department of Education. Section 901(b) of the Debt Act, 53 P.S. §6780-401(b) provides that:
Exclusive jurisdiction is hereby conferred on the department to hear and determine all procedural and substantive matters arising from the proceedings of a local government unit taken pursuant to this act, including without limitation, *385 the regularity of the proceedings, the validity of the bonds, notes, tax anticipation notes or other obligations of the local government unit, and the legality of the purpose for which such obligations are to be issued.

(Emphasis added.) The pertinent District Resolution authorizing the bond issue states that the proceeds are to be applied "for and toward a capital project that consists of: (1) acquiring, constructing, furnishing and equipping of alterations, additions and improvements to the Annville Elementary School; and (2) paying costs and expenses of issuance of the Bonds . . . ." Certified Record, Item 1; Reproduced Record at 16a. The DCA presiding officer found this to be a legal purpose for incurring debt under the Debt Act and concluded that final approval of the project by the Department of Education was not a prerequisite to approval by the DCA.
Our research has failed to disclose case law specifically defining the proper scope of inquiry of the DCA regarding "the legality of purpose" for which a debt obligation is incurred. Certainly the wisdom of the decision of a local government unit to proceed with a particular project is not subject to the review of the DCA. Property Owners, Residents, and/or Taxpayers of Pleasant Valley School District v. Pleasant Valley School District, 100 Pa. Commonwealth Ct. 513, 515 A.2d 85 (1986). Petitioners contend that DCA is required to await final approval of the District's Construction project by the Department of Education. See Sections 731 and 733 of the Code, 24 P.S. §§7-731 and 733. We do not think, however, that DCA's duty to determine whether the project has a "legal purpose" necessarily coincides with or must await the Department of Education's approval of plans and specifications for the project. We think that DCA's review regarding the purpose of the project is intended primarily to insure that the project *386 is, in a broad sense, a proper governmental undertaking. While we would not presume to define the bounds of such governmental projects, we must agree with the DCA that the renovation of an elementary school is clearly a legitimate purpose underlying a school district's decision to issue bonds.
We, accordingly, will order that the adjudications of the DCA be affirmed.

ORDER
The orders of the Department of Community Affairs in the above-captioned matters are hereby affirmed.
NOTES
[1] The Debt Act is the implementing legislation for Pa. Const. art. IX, §10 which provides, pertinently, as follows:

Subject only to the restrictions imposed by this section, the General Assembly shall prescribe the debt limits of all units of local government including municipalities and school districts. For such purposes, the debt limit base shall be a percentage of the total revenue, as defined by the General Assembly, of the unit of local government computed over a specific period immediately preceding the year of borrowing.
This provision was adopted on April 23, 1968.
[2] Section 632 of the Code was last amended by Section 1 of the Act of March 16, 1967, P.L. 9. Section 401 of the Debt Act was enacted on July 12, 1972.
[3] In light of our statutory interpretation that Section 632 of the Code has been repealed by the Debt Act, we need not reach the District's additional argument that Section 632 is unconstitutional under Article 9, Section 10 of the Pennsylvania Constitution. See supra note 1. We do observe, however, that prior to its repeal in 1968, Article 9, Section 8 of the Pennsylvania Constitution provided for school district debt limits based on a percentage of assessed value of taxable property in the district. Thus, Section 632 of the Code would appear to have been based on that, now repealed, provision of the Constitution.
[4] Since neither the Debt Act nor DCA regulations provide applicable procedural rules, the General Rules of Administrative Practice and Procedure governed the proceedings before DCA. 1 Pa. Code §31.1.