825 A.2d 1245

COUNTY OF NORTHAMPTON

v.

DEPARTMENT OF COMMUNITY AND
ECONOMIC DEVELOPMENT.

Appeal of Bernard V. O'Hare, III, Joseph Deraymond, William H. Hummel, Bernard J. Berg, and James E. Byrne, Intervenors and Department of Community and Economic Development.

Supreme Court of Pennsylvania.

Argued April 7, 2003.

Decided June 16, 2003.

George A. Michak, Nancy J. Kippenhan, Harrisburg, for Dept. of Community and Economic Development.

Bernard V. O'Hare, III, Pro Se.

Joseph Deraymond, Pro Se.

Bernard J. Berg, Pro Se.

James E. Byrne, Pro Se.

William H. Hummel, Pro Se.

William Paul Leeson, Bethlehem, for County of Northampton.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

### OPINION

JUSTICE SAYLOR.

The issue under review is whether, absent well-pleaded allegations of fraud, the Commonwealth of Pennsylvania, Department of Community and Economic Development is precluded from conducting evidentiary hearings in proceedings under the Local Government Unit Debt Act.

In June of 2000, Northampton County Council ("Council") enacted an ordinance authorizing financing for up to $125

million in capital improvements via issuance of thirty-year bonds by the Northampton County General Purpose Authority (the "Authority"), guaranteed by the County's pledge of full faith and credit. As required by the Local Government Unit Debt Act,[1] which establishes an exclusive and uniform procedure pursuant to which a local government may incur indebtedness on bonds or notes, *see* 53 Pa.C.S. § 8001(d), the County commenced a proceeding with the Department of Community and Economic Development (the "Department"),[2] charged with administration of the Debt Act. Subsequently, five citizen-taxpayers ("Complainants"), filed a complaint before the Department pursuant to Section 8211 of the Act, 53 Pa.C.S. § 8211, challenging the validity of the indebtedness proceedings. Complainants asserted, *inter alia*, that Council had failed to obtain statutorily mandated, realistic cost estimates prior to enacting the bond ordinance. *See* 53 Pa.C.S. § 8006 (prescribing that, prior to the issuance of any guaranty to finance any project involving construction or acquisition, a municipality must obtain "realistic cost estimates through actual bids, option agreements or professional estimates from registered architects, professional engineers or other persons qualified by experience"). The County's answer contained general denials of Complainants' averments; no affidavit or other documentation demonstrating the procurement of cost estimates was provided, however.

Although the Department rejected the majority of the challenges raised by Complainants, a presiding officer scheduled hearings directed, *inter alia*, to the question of whether the required cost estimates had in fact been obtained. The County opposed the hearings on the ground that, pursuant to prevailing Commonwealth Court jurisprudence, the Department lacked the ability to conduct an evidentiary hearing absent allegations of fraud. In this regard, the County cited to *Ward v. Commonwealth, Dep't of Cmty. Affairs*, 685 A.2d

---

[1]. Act of December 19, 1996, P.L. 1158, No. 177, § 1 (as amended 53 Pa.C.S. §§ 8001–8271) (the "Debt Act" or the "Act").

[2]. Specifically, the County sought a certificate of approval pursuant to Section 8204 of the Act. *See* 53 Pa.C.S. § 8204.

1061 (Pa.Cmwlth.1996); *Borough of Brentwood v. Department of Cmty. Affairs,* 657 A.2d 1025 (Pa.Cmwlth.1995); *Simonetti v. Commonwealth, Dep't of Cmty. Affairs,* 651 A.2d 626 (Pa.Cmwlth.1994), and *Bethel Park Citizens for Better Educ. Less Taxes (BELT) by DeHuff v. Commonwealth, Dep't of Cmty. Affairs,* 128 Pa.Cmwlth. 439, 563 A.2d 969 (1989). The Department, however, took the position that such decisions were distinguishable, and, moreover, the General Assembly had expressly invested in it jurisdiction and authority to "hear and determine all procedural and substantive matters arising from the proceedings of a local government unit taken under [the Debt Act]." *See* 53 Pa.C.S. § 8211(d). Additionally, the Department invoked its duly promulgated regulations. *See, e.g.,* 12 Pa.Code § 11.12(a) (prescribing that the Department "with or without motion, may schedule a hearing to hear and determine procedural and substantive matters within [its] jurisdiction"). The presiding officer therefore conducted the hearings, and the Department issued an extensive opinion concluding, *inter alia,* that the County had failed to obtain the requisite estimates. *See O'Hare v. County of Northampton,* LGUDA–85, *slip op.* (DCED Mar. 20, 2001). Accordingly, the Department declined to lend its approval to the bond issue.

In making this determination, the Department acknowledged the salutary purposes underlying the Debt Act and associated constraints on its jurisdiction. *See id.* at 26 (recognizing that " '[t]he purpose of the Debt Act is to require disclosure of a project in order to ensure lawfulness and public notice, while respecting the discretion and latitude necessary for a governmental body to pursue a major construction project in a reasonable and business-like way' " (quoting *Borough of Brentwood,* 657 A.2d at 1027 n. 5)). More specifically, the Department recognized the Commonwealth Court's admonition that " '[a]dministrative and judicial authorities will neither invade nor supplant the legislative competence of the local government unit[ ], absent a showing of fraud or abuse.' " *O'Hare, slip op.* at 26 (quoting *Borough of Brentwood,* 657 A.2d at 1028). Nevertheless, the Department reasoned that

"[i]n order to receive the benefit of this presumption of legitimacy, however, the responsible local government unit must have exercised its own prerogative and legislative competence in the first instance." *O'Hare, slip op.* at 26–27. In this regard, the Department explained:

While the Department will not substitute its judgment as to the sufficiency of realistic cost estimates for that of the responsible local government unit, section 8006 of the Debt Act requires such estimates to have actually been obtained.... The record in this case shows no such independent review or acceptance of realistic cost estimates provided to Council by the issuers or by others.

*Id.* at 27.

The County filed a timely petition for review in the Commonwealth Court designating the Department as a respondent under Rule of Appellate Procedure 1513(b). Complainants intervened under Rule 1531.

On review, a panel of the Commonwealth Court reversed in a published opinion, holding that the Department erred in conducting a hearing in the absence of any averment of fraud. *See County of Northampton v. Department of Cmty. and Econ. Dev.*, 785 A.2d 1082, 1086 (Pa.Cmwlth.2001). The panel observed that, although the Debt Act provides a means by which taxpayers may challenge before the Department the validity of proceedings in which a local government has incurred bonded indebtedness, the inquiry is strictly limited to procedural and substantive matters involving the regularity of the proceedings, the validity of the bonds, and the legality of the purpose for which such obligations are to be issued. *See id.* at 1084 (citing *Borough of Brentwood,* 657 A.2d at 1027). The panel emphasized that Section 8111 of the Act, 53 Pa.C.S. § 8111, which delineates the items that must be included in a local government's submission to the Department, contains no requirement of an averment (or specification in an underlying ordinance) that realistic cost estimates were obtained. *See County of Northampton,* 785 A.2d at 1086. While recognizing that procurement of cost estimates is explicitly required under Section 8006 of the Act, the panel nonetheless determined

that, absent a well-pleaded averment of fraud, the Department lacked the ability to inquire beyond the four corners of the County's submission. *See County of Northampton,* 785 A.2d at 1085–86. In this regard, the panel referred to the line of cases invoked by the County before the Department, and, in particular, to *Borough of Brentwood* and *Simonetti. See, e.g., Borough of Brentwood,* 657 A.2d at 1027 ("[O]nly if fraudulent conduct is alleged and supported by specific allegations, is an evidentiary hearing before the [Department] appropriate, as fraud goes to 'the heart of the legality of the proceedings.'" (citation omitted)); *Simonetti,* 651 A.2d at 629 (same). Additionally, the panel reiterated a concern that:

"A requirement that an evidentiary hearing be held in all instances would permit disgruntled taxpayers, who were unable to convince the [local government unit] that its decision was unwise or incorrect, to raise legal roadblocks which would delay or even block such a decision.... In general, administrative and judicial authorities will neither invade nor supplant the legislative competence of the local government unit, absent a showing of fraud or abuse."

*County of Northampton,* 785 A.2d at 1086 (quoting *Simonetti,* 651 A.2d at 628–29; citations omitted) (alterations in original).

Complainants sought allowance of appeal by this Court, and the Department filed a response supporting their position.[3]

Presently, the Department challenges the Commonwealth Court's view of the agency's powers as overly restrictive, contending that it stands in "stark and inexplicable contrast" to the express, statutory grant of authority to the Department to hear and determine all procedural and substantive matters arising from the proceedings of a local government unit taken under the Debt Act. Petition for Allowance of Appeal at 9; *see*

---

**3.** As a basis for a pre-argument motion to dismiss, the County indicated that it has obtained Department approval of the desired financing via a separate Debt Act proceeding and repealed inconsistent aspects of the prior ordinance, and hence, the present matter is moot. In opposition to the dismissal, the Department asserted that the Commonwealth Court's published opinion unduly constrains its ability to conduct its essential, statutory review function. The Court denied the motion to dismiss by Order dated March 13, 2003.

53 Pa.C.S. § 8211(d). The Department traces the derivation of the fraud requirement to a misreading by the subsequent Commonwealth Court panels of the court's decision in *Bethel Park*. In that case, in proceedings under the Act, the Department merely determined, and the Commonwealth Court agreed, that a hearing was unnecessary to address the relevant challenge since there was no valid factual dispute, and therefore, the matter presented purely legal questions. *See Bethel Park*, 128 Pa.Cmwlth. at 444–45, 563 A.2d at 972. The Department emphasizes that *Bethel Park* did not indicate that an allegation of fraud was an essential prerequisite to a Department hearing. Rather, the court merely referred to averment of fraudulent activity as one type of challenge that might implicate a hearing. *Id.* Nevertheless, the Department continues, in *Simonetti*, a panel erroneously cited *Bethel Park* for the proposition that "only if fraudulent conduct is alleged and supported by specific allegations, is an evidentiary hearing before the [Department] appropriate[.]" *Simonetti*, 651 A.2d at 629.

The Department highlights that *Simonetti's* characterization of *Bethel Park* was unnecessary to the disposition of the case, since, as in *Bethel Park*, solely legal questions were presented. *See Simonetti*, 651 A.2d at 629–30. Likewise, in the cases that followed, based on the documentation submitted to the Department by the local government unit, the Commonwealth Court also determined that the agency properly made a legal determination without holding an evidentiary hearing. *See Ward*, 685 A.2d at 1064–65 (rejecting a complainant's argument that a hearing should have been conducted to resolve genuine issues of material fact concerning the private nature of a municipal garage, where the Department accepted the complainants' version of the facts in concluding, as a matter of law, that a municipal garage would serve a basic public purpose); *Borough of Brentwood*, 657 A.2d at 1028 (affirming the Department's denial of an evidentiary hearing concerning the adequacy of cost estimates for an $18 million school project). The Department contends that the present debt proceeding is distinguishable from each of these cases,

because there was more than a purely legal matter at issue—here, there was a genuine issue of material fact that could not be answered based solely on the pleadings, motions, or by reference to the debt proceedings, without additional evidence.

The Department candidly acknowledges the concerns expressed in the Commonwealth Court's decisions that the administrative agency not be permitted to substitute its judgment for that of local elected officials, and that complainants not be allowed to unduly obstruct debt proceedings. The Department, however, explains that it has no interest in substituting its judgment concerning the quality or sufficiency of cost estimates actually obtained by the local government unit, but that it is statutorily charged with the responsibility to require—and where there is a challenge, to verify—that local government units fulfill their obligations to make reasonably informed decisions regarding the issuance or guaranty of debt. As such, the Department contends that it is among its essential functions to inquire as to whether cost estimates have, in fact, been obtained by the local government where there is a material, factual dispute in this regard. Further, the Department addresses the concern related to undue interference with debt proceedings as follows:

> The Department is sensitive to this concern, but, fairly read, the Department's decision does not even begin to suggest a conclusion that every taxpayer complaint is entitled to a hearing. The choice lies not at the extremes, i.e., that a hearing must always be held or may never be held. The choice, instead, lies in the administrative authority of the Department as it reviews citizen complaints under the purview of regulations properly promulgated under the authority and jurisdiction granted by the General Assembly. . . . Commonwealth Court's holding in this case strips away that authority and discretion and, in so doing, impermissibly limits the rights of citizens to review the actions of their local government units.

Much of the remainder of the Department's brief is dedicated to explaining why the fraud requirement unduly hampers the ability of the taxpayers to challenge, and its ability to examine,

debt proceedings that may be procedurally or substantively infirm, but not fraudulent.

Complainants incorporate the Department's brief by reference as their submission to the Court; the County presently has declined to take a position on the merits of the controversy, for the reasons set forth in its motion to dismiss. *See supra* note 3. At oral argument, however, the County agreed with the Department that there is little justification in the Debt Act to support a fraud threshold to Department hearings. The County maintained, nonetheless, that it is important for this Court to reaffirm that debt proceedings should be protected from unfettered interference by the Department or disgruntled taxpayers.

As noted, the Debt Act establishes controls over a local government which seeks to incur indebtedness on bonds or notes. *See* 53 Pa.C.S. § 8001(d). The enactment requires disclosure to ensure lawfulness and public notice, while at the same time constraining administrative agency review in deference to the discretion of a local government body to pursue major projects in furtherance of the public interest. *See Borough of Brentwood,* 657 A.2d at 1027 n. 5. The realistic cost estimate requirement represents one restrained mechanism fashioned by the General Assembly to ensure the requisite fiscal responsibility without unnecessary intrusion. *See* 53 Pa.C.S. § 8006. "Such pre-planning, it has been found, enables a local government unit to have a reasonable idea as to costs and avoid the inevitable misunderstandings that arise when construction bids are received." LOCAL GOVERNMENT COMMISSION, REPORT TO THE GENERAL ASSEMBLY AND DRAFT OF LOCAL GOVERNMENT UNIT DEBT ACT, at 6 ¶ 6 (Jan. 1972).

In the present case, a serious and legitimate question arose before the Department concerning whether Council had accomplished the essential pre-planning mandated by Section 8006. Indeed, at hearing, Complainants succeeded in establishing that the statutory requirement had not been observed by Council. The fact that the County was not required by the statute to affirmatively include the cost estimates in its submission to the Department merely suggests that the General

Assembly did not see the need to include them as an element of a local government's *prima facie* case for approval, thus placing the burden on complainants to establish that cost estimates were not in fact obtained. The absence of a reference to cost estimates from among Section 8111's submission requirements does not suggest that the Legislature intended to shield local government units from any scrutiny regarding compliance with the statutory cost estimate requirement. The Department's express jurisdiction and authority to hear and determine all procedural and substantive matters arising from debt proceedings, *see* 53 Pa.C.S. § 8211(d), plainly subsumes the ability to conduct an evidentiary hearing to address a material factual controversy in this regard.

Further, on review, it is clear that the requirement of a well-pleaded averment of fraud as a prerequisite to a Department hearing unduly restricts taxpayers' ability to question, and the Department's ability to ensure, compliance with procedural and substantive provisions of the statute. The Department is also correct in its summary of the derivation of the fraud requirement. Indeed, that in each of the cases cited by the Commonwealth Court the Department had determined that an evidentiary hearing was unnecessary suggests that the Department gives heed in practice to the accurate understanding of its role in debt proceedings as detailed in its briefing before this Court.

In summary, neither the Debt Act nor its supporting regulations requires a well-pleaded averment of fraud as an essential predicate to an evidentiary hearing in debt proceedings. To the extent that the Commonwealth Court's decisions in *Simonetti; Borough of Brentwood* and *County of Northampton* interject such a requirement, those decisions are disapproved. We hold that the Department has jurisdiction and authority under the Debt Act and its associated administrative regulations to conduct evidentiary hearings to resolve material factual controversies arising from procedural and substantive matters within the purview of the Act. While such hearings are to be avoided where possible and should not be invoked to unnecessarily hinder legitimate debt undertakings, nothing

presented here suggests that the restrictions embodied in the Act and the regulations are insufficient to maintain the essential balance that was intended by the Legislature.

The order of the Commonwealth Court is vacated, and further proceedings on the matter are deemed moot.