**April M. KOPPENHAVER, Petitioner**

v.

**DEPARTMENT OF COMMUNITY AND ECONOMIC DEVELOPMENT, Respondent**

**County of Lancaster, Petitioner**

v.

**Department of Community and Economic Development, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 27, 2006.

Decided May 3, 2006.

See also 569 Pa. 107, 801 A.2d 469; 885 A.2d 669.

Kathryn L. Simpson, Harrisburg, for petitioner, April M. Koppenhaver.

Howard L. Kelin, Lancaster, for petitioner, County of Lancaster.

David C. Sirolly and Robert J. Tribeck, Harrisburg, for intervenor, City of Lancaster.

BEFORE: COLINS, President Judge, and SIMPSON, Judge, and LEAVITT, Judge (P).

OPINION BY Judge SIMPSON.

These are consolidated appeals from a decision of the Department of Community and Economic Development (Department) approving two bond guaranties adopted by the City of Lancaster (City). The guaranties are part of a financing agreement for the construction of the controversial Lancaster Convention Center/Hotel (Project or Overall Project).[1] April M. Koppenhaver (Taxpayer) and the County of Lancaster (County) (collectively, Complainants) petition for review of the Department's dismissal of their respective complaints, asserting the invalidity of the City's debt proceedings under the Local Government Unit Debt Act (Debt Act), 53 Pa.C.S. §§ 8001–8271. For the reasons that follow, we affirm.

## I. Background

### A. Facts and Procedural History

The Project, part of the City Redevelopment Authority's (Redevelopment Authority) plan to reinvigorate the City's Penn Square commercial district, dates back to the 1990s. It entails the renovation of the former Watt and Shand building, a City landmark, into two units: a 300–room Marriott Hotel (Hotel) and the adjoining Lancaster Convention Center. High Associates, Ltd. (Project Designer), a real estate developer specializing in commercial, industrial and hotel properties, designed the Project.

A financing agreement for the Project was not achieved until 2004. Parties to the agreement include the City, the Redevelopment Authority, the Lancaster County Convention Center Authority (Convention Center Authority) and Penn Square Partners (Developer), a private entity which will operate the Hotel. As to the Hotel, the Redevelopment Authority will be the fee simple owner of the Hotel property unless and until it is sold. Developer will lease the Hotel for a term of 20 years. At the expiration of the lease, Developer will have an option to purchase the Hotel. As to the Convention Center, the Convention Center Authority will own and operate it.

As part of the financing package, the Redevelopment Authority will issue two series of bonds: $12,000,000 ($12M) in special revenue bonds and $24,000,000 ($24M) in lease revenue bonds. Debt service payments (principal and interest) on the special revenue bonds will be covered by a 20–year series of grants the Redevelopment Authority will receive under the recently enacted Infrastructure and Facilities Improvement Program, 12 Pa.C.S. §§ 3401–3406, popularly known as "Act 23." Debt service payments on the lease revenue bonds will be covered by Developer's rental payments on the 20–year Hotel lease. As part of the financing package, the City will guaranty payment of debt service on both series of the Redevelopment Authority's bonds.

Council discussed the Project on at least three occasions: the March 8 regular meeting, the April 4 special meeting and the April 12 regular meeting.[2] At the

---

1. *See Smithgall v. Campbell,* 885 A.2d 669 (Pa.Cmwlth.2005)(challenge to legality of debt statements for Project guaranties); *Bold Corp. v. County of Lancaster,* 790 A.2d 1099 (Pa. Cmwlth.), *vacated and remanded,* 569 Pa. 107, 801 A.2d 469 (2002), *aff'd on remand by mem. opinion* (Pa.Cmwlth., No. 1227 C.D.2001, 809

A.2d 1096 filed October 4, 2002) (challenge by area hotels to hotel room tax to pay for Project).

2. *See* City Council Meeting Minutes: March 8, 2005 (R.R. at 314a–21a); April 8, 2005 (R.R.

April 12 meeting, Council enacted administrative ordinances approving the guaranties. Ordinance No. 5 authorized the City's full guaranty of the Redevelopment Authority's payment of debt service on the special revenue bonds ($12M guaranty). Ordinance No. 10 authorized the City's limited guaranty covering a potential shortfall in the Redevelopment Authority's payment of debt service on the lease revenue bonds "in the event and to the extent" the Redevelopment Authority must pay real estates taxes on the Hotel property (limited guaranty).[3]

As required by the Debt Act, the City filed debt proceedings seeking Department approval to become bound by its $12M and limited guaranties.[4] Pursuant to Section 8211 of the Debt Act, 53 Pa.C.S. § 8211, Taxpayer and the County each filed a complaint asserting the invalidity of the debt proceedings.

Complainants advanced several "legality of purpose" challenges under 53 Pa.C.S. § 8211. They claim the "true and intended purpose" of the limited guaranty is to promise to pay the Hotel's real estate taxes for the benefit of Developer in the event the property is not immune from taxation while under Redevelopment Authority ownership. The City's promise to pay real estate taxes, Complainants contend, does not constitute a "legal purpose."

Also relevant for current purposes, Complainants alleged the City failed to obtain and consider realistic cost estimates for the Hotel component of the Project as required by 53 Pa.C.S. § 8006.

The City filed answers and motions to dismiss; it also submitted evidence in response to Complainants' cost estimate allegations. Complainants filed discovery motions and requested an evidentiary hearing on the cost estimate issue. During a June 2005 conference call, the parties presented argument on the procedural motions and the merits.

Thereafter, the Department issued orders consolidating the two complaints. It also denied (a) the City's motion to dismiss to the extent it challenged the County's standing; (b) the motion for discovery; and (c) the motion for evidentiary hearing on the preliminary cost estimate issue.

In July 2005, Complainants filed briefs. Therein, they argued for the first time that the City did not obtain realistic cost estimates specifically attributable to the Hotel construction, the subject of the guaranties.

The Department held a September 2005 conference call to address the Hotel cost estimate issue; it granted the City's request to submit a reply brief and proof showing all Council members were aware of the estimated Hotel cost. The City submitted affidavits from three witnesses stating all Council members obtained and reviewed the cost estimate for the Hotel prior to enacting the Ordinances. The City also submitted additional cost esti-

at 871a–82a); and April 12, 2005 (R.R. at 625a–41a).

3. The City's mayor signed the Ordinances. He also signed the debt statements and forwarded them to the controller for his required signature. However, the controller, after reviewing a legal memorandum from the County, questioned the legality of the guaranties and refused to sign the debt statements. Ultimately, the debt statements were executed. See Smithgall v. Campbell.

4. A local government unit guaranty of an authority's bonds is deemed "lease rental" debt. 53 Pa.C.S. § 8005(d). Debt proceedings submitted for approval of lease rental debt must include: (1) the ordinance authorizing the guaranty and (2) a debt statement indicating the gross indebtedness of the local government unit and its borrowing base. See 53 Pa.C.S. § 8110, 8111.

mate documents. The Department accepted the City's evidence as credible and concluded Council was aware of the projected Hotel cost.

Ultimately, the Department held the City's debt proceedings satisfied the requirements of the Debt Act and dismissed Complainants' complaints. It concluded the Project was a "legitimate government undertaking" and thus the City's guaranties met the legality of purpose test. The Department further concluded the City obtained and reviewed realistic cost estimates for the Project before enacting the Ordinances. Complainants petition for review.[5]

On appeal, Complainants advance two primary arguments. They contend the City's limited guaranty fails the "legality of purpose" requirement in 53 Pa.C.S. § 8211. Complainants' maintain the true and intended purpose of the limited guaranty is to pay the Hotel's real estate taxes in the event the property is not immune from taxation, which is unlawful for various reasons. They also assert both guaranties violate 53 Pa.C.S. § 8006 because the City did not obtain a realistic cost estimate for the Hotel before approving the guaranties.

**B. Purposes of Debt Act Review**

■ Article IX, § 10 of the Pennsylvania Constitution provides in pertinent part: "[T]he General Assembly shall prescribe the debt limits of all units of local government including municipalities and school districts." "[T]he Debt Act establishes controls over a local government which seeks to incur indebtedness on bonds or notes." *County of Northampton v. Dep't of Cmty. And Econ. Dev.*, 573 Pa.

401, 409, 825 A.2d 1245, 1249 (2003). "The enactment requires disclosure to ensure lawfulness and public notice, while at the same time constraining administrative agency review in deference to the discretion of a local government body to pursue major projects in furtherance of the public interest." *Id.*

■ "The Debt Act carries out this mandate by limiting the amount of debt a local government unit may incur and providing the means for incurring, evidencing, securing and collecting this debt." *Property Owners, Residents and/or Taxpayers of the Pleasant Valley Sch. Dist. v. Pleasant Valley Sch. Dist.*, 100 Pa.Cmwlth. 513, 515 A.2d 85, 88 (1986).

■ The Act also "provides a means by which taxpayers and other interested parties may challenge the validity of the proceedings in which a local government unit incurs bonded debt." *Simonetti v. Dep't of Cmty. Affairs*, 651 A.2d 626, 628 (Pa.Cmwlth.1994), *overruled in part on other grounds by County of Northampton.* However, the Debt Act is "concerned *exclusively* with compliance by the local government unit with the procedures mandated therein." *Property Owners*, 515 A.2d at 89 (emphasis added). "Consideration of [third party opinions as] to whether or not a specific project is necessary or wise, is beyond the authority granted to [the Department]." *Id.*

The Department's Debt Act review is narrowly limited. Section 8211(d), 53 Pa. C.S. § 8211(d), provides:

> The department has exclusive jurisdiction to hear and determine *all procedural and substantive matters arising from the proceedings of a local government*

---

5. Our review of a Department decision is limited to determining whether the Department's findings of fact are supported by substantial evidence, or whether it committed errors of law or violated constitutional rights. *Borough of Wilkinsburg v. Dep't of Cmty. and Econ. Dev.*, 728 A.2d 389 (Pa.Cmwlth.1999).

*unit taken under this subpart, including the regularity of the proceedings, the validity of the bonds, notes, tax anticipation notes or other obligations of the local government unit and the legality of the purpose for which the obligations are to be issued* .... The department may, after ,appropriate proceedings in accordance with its regulations, approve or disapprove the proceedings of the local government unit.... A determination by the department under this subpart shall ... be conclusive and binding as to all procedural and substantive matters which were or could have been presented to the department hereunder. (Emphasis added.)

### C. County's Standing under 53 Pa.C.S. § 8211(a)

■ Before reaching Complainants' appeals, we address the City's contention the County lacks, standing as an "interested party" under 53 Pa.C.S. § 8211(a) to contest the debt proceedings. The City asserts the County has no substantial, direct or immediate interest in this litigation. *See Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975). Following oral argument, the Department denied the City's request to dismiss the County's complaint on this basis. R.R. at 578a.

In its complaint, the County asserted it has a direct financial interest in the City's two guaranties pertaining to the Hotel. The County claims (1) a financial interest in real estate taxes which are likely to be assessed on the Hotel and (2) the financial risk to the County arising from the County's guaranty of the Convention Center Authority's bond issue (convention center

guaranty) to finance the Convention Center construction.[6] *See* R.R. at 391a.

In response, the City argues the County's convention center guaranty does not afford it standing to contest the validity of the City's guaranties related to the Hotel component of the Project. The City asserts the fact the Project may· impact County taxpayers in the future does nŏt provide the County standing, on its own, to challenge the City's debt proceedings.

As will be discussed below, the stated purpose of the City's guaranties is to induce the Redevelopment Authority to undertake the Project and to make the bonds more marketable. *See* R.R. at 11a–12a; 51a. Ordinance No. 5 defined the "Project," and Ordinance No. 10 defined the "Hotel Project." The definitions are identical: "[A] redevelopment project in this City that includes the construction of a hotel and related facilities *in connection with the construction of a convention center* on or near Penn Square." *Id.* at 10a, 50a (emphasis added).

Given the County's role as bond guarantor for the Convention Center, and the interconnectedness of the Hotel and Convention Center, we believe the County qualifies as an "interested party" in this matter under 53 Pa. C.S § 8211(a). The County's involvement here goes beyond that of a City taxpayer· or simply a county in which a redevelopment project is undertaken. Here, the County's financial interests in the planned Convention Center, and the liability risk related to its construction, are intertwined with the Hotel component of the Project. Viewing the totality of the circumstances, we conclude the Department did not err in ruling the County had standing under 53 Pa.C.S.

---

**6.** The County claims its liability exposure under the convention center guaranty will exceed $60,000,000 ($60M). Although this fact

is not of record, the parties do not dispute the fact the County is bond guarantor for the Convention Center construction.

§ 8211(a) as an "interested party" in this matter. *Id.*

## II. Legality of Purpose Challenges

### A. Scope of Test

Complainants' allege the limited guaranty fails the "legality of the purpose for which the obligations are to be issued" review in 53 Pa.C.S. § 8211(d). They claim the guaranty is unlawful for several reasons.

The scope of the legality of purpose test was delineated by this Court in *Mellinger v. Dep't of Cmty. Affairs,* 111 Pa.Cmwlth. 377, 533 A.2d 1119 (1987). In that case, the Department determined a school district's bond issue for improvements to an elementary school met the legality of purpose test. The Court stated, 533 A.2d at 1123 (emphasis added):

> Our research has failed to disclose case law specifically defining the proper scope of inquiry of the [Department] regarding "the legality of the purpose" for which a debt obligation is incurred. Certainly the wisdom of the decision of a local government unit to proceed with a particular project is not subject to the review of the [Department].... We think [the Department's] review regarding the purpose of the project *is intended primarily to insure that the project is, in a broad sense, a proper governmental undertaking.*

Here, the Department determined the City "met the threshold requirement of establishing that the Project is, in a broad sense, a legitimate governmental undertaking." Dep't Dec. at 13.

### B. Express Purpose of Limited Guaranty

■ Complainants argue the limited guaranty fails the legality of purpose test because the guaranty was adopted for an illegal purpose. They contend the purpose of the guaranty is to shift the risk of Hotel real estate tax liability from Developer to City taxpayers.

The facts here, Complainants allege, are different from those in *Mellinger* or *Property Owners.* In those cases, the bonds were approved for additions to school district buildings, a lawful purpose. As Complainants acknowledge, the legality challenges there were based on collateral legal violations unrelated to the lawful purpose of the bonds. Complainants argue the stated purpose of the limited guaranty here is itself unlawful.

We disagree; *Mellinger* controls here. The purpose of the limited guaranty is to induce the Redevelopment Authority to undertake and complete the Project. Section 1 "authorizes and requests the Authority to undertake the Hotel Project."[7] R.R. at 52a.

The express purpose for the limited guaranty is to make it possible for Redevelopment Authority to build the Project. There can be no reasonable dispute that redevelopment is a legal purpose for both City and Redevelopment Authority action. Thus, the Project is, in a broad sense, a proper governmental undertaking. Moreover, there is no challenge to the purpose

---

7. Ordinance No. 10 further provides:

WHEREAS, The City, as an inducement to the Authority and [Developer] to enter into the Lease, as an inducement to the Authority to undertake the Hotel Project and to authorize and to issue the Bonds, and as an inducement to initial purchasers and to subsequent holders of the Bonds, from time to time, and to enhance and ensure the marketability of the Bonds, desires to enter into a Limited Guaranty Agreement with respect to the Bonds, as is permitted by the Debt Act, and other applicable laws of the Commonwealth.

R.R. at 51a.

of the bonds to be issued by the Redevelopment Authority. In the absence of such a challenge, we conclude the underlying debt has a legal purpose.

The City offers to guarantee the Redevelopment Authority's underlying debt. As the Department noted, the City is authorized by the Debt Act to do so. *See* 53 Pa.C.S. §§ 8005(b),(c) and 8104(b). As a result, the form of the City's obligation is lawful. Further, the City's limited guaranty has the stated purpose of enhancing and ensuring the marketability of the Redevelopment Authority's bonds. R.R. at 62a. Enhancing the marketability of the underlying debt securities is a legal purpose.

For all the foregoing reasons, the stated purpose of the City's guaranties is legal. *Mellinger; Property Owners.*

## C. Operation of Limited Guaranty

■ Nevertheless, Section 5 of Ordinance No. 10 provides the City will guaranty payment of debt service on the lease revenue bonds *to the limited extent* there is a shortfall in the amount available to the Redevelopment Authority under the lease because the Authority must pay real estate taxes on the Hotel property.[8] Complainants thus argue the guaranty is merely a mechanism to indirectly pay real estate taxes for Developer. Therefore, they claim the guaranty fails the legality of purpose test.

Complainants argue the Hotel property will be subject to real estate taxation even though owned by the Redevelopment Authority, a Commonwealth agency generally entitled to a presumption of immunity from taxation. They cite, among other cases, *S.E. Pa. Transp. Auth. v. Bd. of Revision of Taxes*, 574 Pa. 707, 833 A.2d 710 (2003), for the proposition that a Commonwealth agency will lose its tax immune status if it acts outside its authorized purpose or outside the scope of its immunity.[9]

Complainants also claim the Redevelopment Authority, as a long-term owner of the Hotel, would likewise be engaging in an activity beyond the scope of its intended operation under the Urban Redevelopment Law,[10] eliminating blighted properties and promptly returning them to the tax rolls. They rely on *Belovsky v. Redevelopment Auth. of the City of Phila.*, 357 Pa. 329, 54 A.2d 277 (1947). Therefore, Complainants maintain the Hotel property

8. Section 5 of Ordinance No. 10 provides:

This City, as guarantor, shall enter into a Limited Guaranty Agreement . . . with the Authority . . . with respect to the Hotel Project and the Bonds . . . under terms and provisions of which . . . this City shall guaranty, unconditionally . . . full and prompt payment of Debt Service . . . to the extent provided in the Limited Guaranty Agreement, as such shall be due and payable with respect to the Bonds from and after a Real Estate Tax Event . . . **LIMITED, HOWEVER, TO ONLY** amounts equal to the shortfall in amounts available to the Authority under the Lease to pay such principal and interest when due that occurs because the Authority must apply amounts to the payment of real estate taxes on the property subject to the Lease.

9. In *S.E. Pa. Transp. Auth.*, SEPTA, a Commonwealth agency, purchased a 20–story office building for its headquarters. To raise revenues, SEPTA leased space in the building to various government, non-profit and commercial entities. SEPTA applied to the tax revision board for an exemption.

The Supreme Court recognized SEPTA is statutorily authorized to lease its real estate to raise revenues and reduce its expenses. The Court, however, determined SEPTA's leasing of real estate to commercial tenants is not an activity connected to its purpose of operating a regional public transportation system. Therefore, SEPTA's property leased to commercial tenants was not immune from real estate taxation.

10. Act of May 24, 1945, P.L. 991, *as amended*, 35 P.S. §§ 1701–1719.2.

will not be immune from real estate taxation under the City Authority's ownership.

Complainants' challenges to the operation of the limited guaranty do not compel a different result, for both legal and practical reasons. Legally, the assertions clearly exceed the scope of the Department's inquiry under the Debt Act.[11] *Mellinger; Property Owners.* Thus, tax matters are outside the scope of debt matters addressed in the Debt Act. *Bundy v. Belin,* 501 Pa. 255, 461 A.2d 197 (1983). In *Bundy,* our Supreme Court stated:

> [I]t would be exceedingly inappropriate, if not absurd, and clearly unreasonable to assume the legislature intended to confer jurisdiction, *in a provision of the Debt Act, upon the [Department]* over the subject matter of tax limitations which is beyond the purview of that Act.

*Id.* at 264, 461 A.2d at 202 (citation omitted, emphasis in original).

As a practical matter, the City's limited guaranty will operate on several premises. First, there must be a Real Estate Tax Event.[12] Second, there must be a shortfall in amounts available to the Redevelopment Authority under the Hotel lease. Third, the shortfall must not be satisfied in some other way, such as payment by another party. It is unclear whether any of these events will happen.

Moreover, the Department is not the proper forum in which to litigate the significance or the likelihood of these events. Thus, by definition a Real Estate Tax Event is dependent upon some future legislative or judicial action. Real estate tax

exemptions generally are decided by administrative boards with expertise in that field and, on appeal, by local courts. *See S.E. Pa. Transp. Auth.* Additionally, the Department boasts no special ability to predict remedies businesspersons may fashion in the future.

In short, the Department cannot be expected to inquire into every possible consequence of a complex redevelopment project, such as tax, zoning, and environmental issues. The Department lacks expertise in many areas beyond the Debt Act. So, questions regarding real estate taxation are properly addressed to a body with the power of reassessment, not to a body whose inquiry is limited to incurrence of debt.

### D. Illegal Purpose: Alleged Violation of Act 23

■■■ Complainants next assert the limited guaranty fails the legality of purpose test because it was intended to violate Act 23. Specifically, they aver the guaranty facilitates an arrangement between Developer and the Redevelopment Authority to violate Act 23's requirement that Developer pay real estate taxes on the Hotel property. Act 23 grant approval, Complainants contend, requires Developer, as a "project user," to sign a contract with the Redevelopment Authority agreeing to timely pay any real estate taxes on the Project. Basically, Complainants argue 12 Pa.C.S. § 3406(b)(11) prohibits Developer from shifting the risk of paying potential real

---

11. *See also Skonieczny v. Economy,* LGUDA–94 (DCED, February 19, 2004), *aff'd,* 853 A.2d 1172 (Pa.Cmwlth.2004), *petition for allowance of appeal denied,* 583 Pa. 666, 875 A.2d 1077 (2005) (complainant's allegation that guaranty of municipal authority's bonds amounts to illegal indirect taxation is outside narrow scope of Department review under Debt Act).

12. **"Real Estate Tax Event"** is defined by the limited guaranty agreement as "the promulgation of law, amendment of law or binding adjudication by a court of competent jurisdiction that shall cause the real property subject to the Lease to become liable for payment of taxes...." R.R. at 65a.

estate taxes on the Hotel property to the City.

12 Pa.C.S. § 3406(b)(11) provides:

[T]he Department may approve the application and award the applicant a grant in an annual amount. . . . Prior to providing grant funds to the applicant, the department shall enter into a contract with the applicant and project user. The contract shall include provisions which do all of the following:

. . . .

(11) Require the project user to timely pay all Commonwealth and local taxes and fees.

The Department declined to address Complainants' Act 23 challenge. It reasoned it lacked subject matter jurisdiction under the Debt Act to review or make a determination regarding compliance with the requirements of a different statute, Act 23. Citing *Property Owners*, the Department reasoned Debt Act approval does not require "proof of compliance with all other non-Debt Act regulations, statutes, building permits, and other contingencies involved in a project." Dep't Dec. at 12.

We agree. The process for review and approval of Act 23 grants is separate from that under the Debt Act, and it involves other agencies. *See* 12 Pa C.S. §§ 3405, 3406. Only after reviews and approvals from all agencies (and before grant funds are disbursed) are the Act 23 contract provisions with the project user at issue. Here, the record does not reflect an Act 23 contract exists.

The Department did not err in holding it lacked jurisdiction under the Debt Act to address Complainants' prospective Act 23 allegations.[13] *Bundy; Mellinger; Property Owners.*

### E. Illegal Purpose: Other Alleged Violations

 Complainants next allege the limited guaranty fails the legality of purpose test because it violates the Uniformity Clause in Article VIII, § 1 of the Pennsylvania Constitution. Complainants claim the practical effect of the guaranty is to waive City real estate taxes on the Hotel property, which violates the Uniformity Clause.

Complainants also contend the limited guaranty violates statutory law prohibiting the City from exempting the Hotel from real estate taxation. Complainants assert the City's power to decide what real estate is taxable is circumscribed by Sections 305(1)(viii) and (ix) of the Optional Third Class City Charter Law.[14] These provisions limit the City's power to fix subjects of taxation to what is authorized by statute.[15] Complainants argue the limited guaranty illegally exempts the Hotel property from taxation and thus fails the legality of purpose test.

The Department again determined it lacked jurisdiction to address these challenges. We agree. Complainants' arguments involve collateral legal challenges related to real estate taxation. They raise legal issues clearly beyond the Department's scope of review under 53 Pa.C.S. § 8211(d). *Bundy; Mellinger; Property*

---

**13.** *See also Volek v. Albert Gallatin Area Sch. Dist.*, LGUDA–69 (DCA, September 28, 1994) (Debt Act does not authorize the Department to review violations of other statutes that may effect the bond issue.)

**14.** Act of July 15, 1957, P.L. 901, *as amended*, 53 P.S. §§ 41305(1)(viii) and (ix).

**15.** *See also* 53 Pa.C.S. § 2962(a)(6) (home rule municipalities have no greater power than non-home rule municipalities to fix subjects of taxation).

*Owners.* For reasons previously discussed, the Department correctly held it lacked jurisdiction to address these challenges under the Debt Act.

### III. Preliminary Cost Estimate Challenge

■■■ Complainants also contend both guaranties are invalid because the City failed to review realistic cost estimates for the Hotel as required by 53 Pa.C.S. § 8006.[16] "The realistic cost estimate requirement represents one restrained mechanism fashioned by the General Assembly to ensure the requisite fiscal responsibility without unnecessary intrusion." *County of Northampton,* 573 Pa. at 409, 825 A.2d at 1249–50.

■■■ The Debt Act does not require a local government unit to include a project's preliminary cost estimates in its application for debt approval. *Id.* Therefore, it is Complainants' burden "to establish that cost estimates were not in fact obtained." *Id.* at 410, 825 A.2d at 1250. The Department's duty under 53 Pa.C.S. § 8006 is "to inquire as to whether cost estimates, have, in fact, been obtained by the local government where there is a material, factual dispute in this regard." *County of Northampton,* 573 Pa. at 408, 825 A.2d at 1249. This Court may conclude the Department, based on the evidence submitted to it by the local government unit, "properly made a legal determination [regarding compliance with 53 Pa.C.S. § 8006] without holding an evidentiary hearing." *Id.* at 407, 825 A.2d at 1248.

■■■ The Department, in reviewing compliance with 53 Pa.C.S. § 8006, "has no

interest in substituting its judgment concerning the quality or sufficiency of cost estimates actually obtained by the local government unit...." *County of Northampton,* 573 Pa. at 408, 825 A.2d at 1249. Rather, "it is statutorily charged with the responsibility to require—and where there is a challenge, to verify—that local government units fulfill their obligations to make reasonably informed decisions regarding the issuance or guaranty of debt." *Id. See also Borough of Brentwood v. Dep't of Cmty. Affairs,* 657 A.2d 1025, 1028 (Pa. Cmwlth.1995), *overruled in part on other grounds by County of Northampton* (administrative and judicial authorities will not invade legislative domain of local government unit).

■■■ Moreover, "[t]he law is clear that the local government unit need only provide a brief description of the project, adequate to inform the public of its general plan and to enable the Department to ascertain legality." *Brentwood.* Uncertainty as to specific details of the project "cannot be considered proof that the cost estimates are unrealistic...." *Id.*

Here, Complainants allege the cost estimates reviewed by Council members are not realistic, not in adequate detail and are not legally sufficient because they do not identify the costs directly attributable to the Hotel. Dep't Dec. at 18. However, the Department concluded Council obtained, reviewed and approved realistic estimates not only for the Overall Project, but also for the Hotel subcomponent:

Based on our review of the credible testimony of the City witnesses and exhibits of record, *the Department finds*

16. Section 8006 provides:
Prior to the initial authorization of bonds or notes or the issuance of any guaranty to finance any project involving construction or acquisition, the governing body shall ob-tain realistic cost estimates through actual bids, option agreements or professional estimates from registered architects, professional engineers or other persons qualified by experience....

that City Council obtained the preliminary cost estimates in the form of the Cost Estimate Exhibit and that City Council reviewed and approved the preliminary cost estimates prior to adopting the Ordinances as required by the Debt Act. The Cost Estimate Exhibit provides a breakdown of the costs of construction for the Project and satisfies the preliminary cost estimate requirement of the Debt Act. The evidence further establishes that all members of City Council heard a presentation on the Project Plan and that there was public debate and discussion about the wisdom of the Project during at least two public meetings prior to passage of the Ordinances. Moreover, there is evidence that City Council was also provided with an estimate of the Hotel portion of the Project.

Dep't Dec. at 23 (emphasis added, footnotes omitted).

## A. Substantial Evidence Challenge

 In Debt Act cases, the Secretary of the Department serves as the sole fact finder. *Skonieczny v. Dep't of Cmty. Affairs*, 853 A.2d 1172 (Pa.Cmwlth.2004), *petition for allowance of appeal denied*, 583 Pa. 666, 875 A.2d 1077 (2005). He "may weigh and consider all evidence relevant to the proceedings before him." 853 A.2d at 1179. When supported by substantial evidence, the Department's findings will not be disturbed on appeal. *Id.*

 The parties do not dispute Council reviewed the Cost Estimate Exhibit, which contained the following preliminary cost estimates for the Project:

| | |
|---|---|
| Site Acquisition | 5,290,000 |
| Hard Cost (construction costs....) | 77,946,045 |
| FF & E (furniture, fixtures & equipment) | 14,421,187 |
| Soft cost (professional & financing fees) | 14,980,419 |
| Contingency (funds for unforeseen items) | 4,545,506 |
| Subtotal | 117,183,156 |
| Financing Costs (placement, reserves....) | 11,768,844 |
| Subtotal | 11,768,844 |
| **Total Uses** | 128,952,000 |
| **Reserve for Future Eligible Project Cost** | 5,200,000 |

 R.R. at 311a. The Department further concluded Council obtained, reviewed and approved the cost estimate for the Hotel. In support, the Department identified the following affidavits and attachments.[17]

The Department cited a Project document titled: "Allocation of $129 Million of Costs for Hotel/Convention Center Project" (Cost Allocation Statement). *See* R.R. at 844a. It includes cost estimates of $68,700,000 ($68.7M) for the Convention Center and $60,300,000 ($60.3M) for the Hotel. *Id.*

The City submitted the affidavit of City Clerk Janet Spleen (City Clerk). R.R. at 865a–67a. City Clerk stated that prior to the enactment of the Ordinances, all Council members were provided with Administrative Bill No. 7 and its attachments, which included the Cost Allocation Statement. *Id.*

The City also submitted two affidavits from City Council President Stephen J. Diamantoni (Council President). In his first affidavit, submitted with the City's answers, Council President testified he was present at the March 7, 2005 meeting of Council's Finance Committee. R.R. at 275a. At that meeting, a presentation was made regarding the proposed costs of the Project, including the preliminary cost es-

---

17. We reject the County's challenge to the reopening of the record to permit supplemental affidavits. The allegation that Council failed to obtain cost estimates attributable solely to the Hotel was first raised in Complainants' briefs. In a subsequent conference call, the Department granted the City's request to submit a reply brief including affidavits and documentation addressing this single new assertion. R.R. at 807a. Neither error nor abuse of discretion is evident.

timates. *Id.* The same presentation was made the next day at the regular Council meeting. Printed copies of the cost estimates were provided to all members of City Council. *Id.*

In his second affidavit, submitted in response to Complainants' argument Council did not obtain cost estimates attributable solely to the Hotel, Council President testified Council was aware that the estimated cost attributable to the Hotel construction was $60.3M. *Id.* The issue of the estimated cost of the Hotel construction was specifically discussed by Council many times prior to the enactment of the Ordinances. *Id.* at 818a. Council members were provided with Administrative Bill No. 7, and the attached Cost Allocation Statement, at both the March 8 and April 12, 2005 meetings. *Id.*

Council President also stated the estimated cost of the Hotel was well-known not only to Council members, but to the public, as evidenced by various newspaper articles. *Id.* All Council members, he concluded, "were well-aware of the estimated cost of the hotel portion of the Project at the time of our enactment of the Ordinances on April 12, 2005." [18] *Id.* at 819a.

Project Designer's President further asserted Council members were provided with cost estimates indicating the $60.3M cost for the Hotel and the $68.7M cost for the Convention Center. *Id.* at 887a. He further stated the $60.3M cost for the Hotel construction did not change prior to the enactment of the Ordinances and has not changed since. *Id.*

Considering the foregoing, we conclude the Department's findings of fact are supported by substantial evidence. *Skoniec-zny.*

### B. Complainants' Assignments of Error

We next address Complainants' assignments of error related to 53 Pa.C.S. § 8006. Complainants allege the Department erred by deciding the preliminary cost estimates need not identify costs attributable solely to the Hotel. They further allege that the preliminary cost estimates lack the specificity or detail required by the Debt Act, and that credible evidence does not show Council reviewed, analyzed and accepted the estimates prior to approving the guaranties.

#### 1.

Complainants first assert the Department erred in determining preliminary cost estimates allocated only to the Hotel were unnecessary. This ruling, they argue, is inconsistent with the legislative intent of 53 Pa.C.S. § 8006, i.e., to require a local government unit to pursue a major construction project in a "reasonable and business-like way." *See Borough of Brentwood.*

As discussed above, all members of Council were aware of the $60.3M cost estimate for the Hotel prior to approving the Ordinances. Thus, we need not decide whether the Department erred on this issue because any error would be harmless.

#### 2.

■ Complainants also argue the affidavits submitted by the City do not support the Department's finding City Council saw realistic cost estimates for the Hotel. They assert the City's affidavits and attached exhibits lack the necessary specific-

---

**18.** Council President stated he addressed Complainants' assertions regarding Council's alleged lack of knowledge of the estimated Hotel costs at Council's July 2005 meeting. R.R. at 818a–19a. He then commented in detail why Complainants' assertions lacked merit. *Id.* at 819a. No Council member disagreed with his comments. *Id.*

ity and detail to be considered "realistic" cost estimates as required by the Debt Act.

Taxpayer argues the cost estimates were incomplete at the time the Ordinances were approved. She cites a July 2005 newspaper article she submitted into evidence.[19] The article stated that as of mid-July, David Hixson, the County Authority's Executive Director, had not yet determined the final construction costs for the Project. The Project team, Hixson said, was still reviewing building renovation costs, including the cost of the heating, plumbing, and air conditioning systems. R.R. at 643a.

The Department acknowledged this newspaper article. Dep't Dec. at 19. However, it concluded 53 Pa.C.S. § 8006 does not require preliminary cost estimates to be in great detail. *Id.* at 24. "The fact that the preliminary cost estimates were not provided in greater detail does not establish they are insufficient and/or unrealistic." *Id.* As the Department noted, the newspaper article, "even if accurate, suggests only that the preliminary cost estimates may have changed over time or do not account for every subcomponent of the overall Project." *Id.*

■ We agree with the Department. Complainants' contention that 53 Pa.C.S. § 8006 requires preliminary cost estimates to be specific as to details is unfounded. Uncertainty as to specific details of a construction project does not constitute proof that cost estimates are not realistic. *Brentwood.* "The law is clear that the local government unit need only provide a brief description of the project, adequate to inform the public of its general plan and to enable the [Department] to ascertain legality." *Id.*, 657 A.2d at 1028.

■ Essentially, to comply with 53 Pa. C.S. § 8006 review, the local government unit need only review a general cost estimate for a project. *County of Northampton; Brentwood.* The level of detail is largely a matter within the local government unit's discretion. At most, the detail of an estimate is a matter of persuasion addressed to the fact finder, not a matter of law addressed to a reviewing court. Therefore, we reject Complainants' contention that Council needed to consider a more detailed cost estimate for the Hotel to comply with 53 Pa.C.S. § 8006.

Here, the City's evidence shows Council was aware, prior to approving the Ordinances, of the $129M estimated cost for the overall Project, the $60.3M estimated cost for the Hotel and the $68.7M estimated cost for the Convention Center. This is sufficient to demonstrate compliance with 53 Pa.C.S. § 8006. *County of Northampton; Borough of Brentwood.*

**3.**

Complainants further assert there is no credible evidence indicating Council reviewed, analyzed and accepted the preliminary cost estimates before approving the Ordinances. They argue the minutes of the Council meetings at which the cost estimates were discussed do not support the averments in the City's affidavits. In particular, Complainants contend the minutes do not reflect any discussion of the Hotel cost estimate.

■ The City responds the evidence it submitted is legally sufficient to indicate Council obtained, reviewed and approved the required cost estimates prior to enacting the Ordinances. Moreover, the City asserts Complainants failed to present any evidence disputing or contradicting the

---

**19.** *See* David Pidgeon, *Convention Center Cost, Budget Not Set,* LANCASTER. INTELLI-GENCER JOURNAL, July 6, 2005, at B1–2; R.R. 642a–43a.

averments in the City's affidavits. The City claims the minutes are not verbatim transcripts of the Council meetings. The City thus argues its evidence is not rendered legally insufficient due to discrepancies between the minutes and the affidavits.

█ We agree. Determinations as to credibility and evidentiary weight fall exclusively within the Department's province as fact finder. *Skonieczny.* The Department reviewed the entire record and accepted the City's multiple witness statements as credible. Further, given the multiple, corroborating affidavits and the lack of direct evidence in rebuttal, the Department did not err in denying Complainants' request for an evidentiary hearing on the Hotel cost estimate issue. *Brentwood.* As a result, we hold the Department correctly decided Council obtained, reviewed and approved realistic cost estimates for the Project before approving the Ordinances. *County of Northampton; Brentwood.*

In view of all the foregoing, the order of the Department is affirmed.

### *ORDER*

AND NOW, this 3rd day of May, 2006, the order of the Department of Community and Economic Development is **AFFIRMED.**